**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 19-cr-257-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**ERIC KING,**

    Defendant.

## ORDER AFFIRMING MAGISTRATE JUDGE'S DETENTION ORDER

The Government charges Defendant Eric King with assault on a federal officer or employee, in violation of 18 U.S.C. § 111.  (*See* ECF No. 1.)  King himself describes the charge as "stem[ming] from an August 17, 2018 encounter in a prison storage room between [himself] and an FCI Florence Administrative Lieutenant."  (ECF No. 40 at 2.)  As the description implies, King was, at that time, serving a custodial sentence in the Bureau of Prisons.

On August 29, 2019, U.S. Magistrate Judge Michael E. Hegarty ordered that King be detained pending trial.  (ECF No. 12.)  Judge Hegarty's order was a foregone conclusion because King remained imprisoned.  By the time of the August 2019 hearing, King had been transferred to FCI Englewood, in Littleton, Colorado (ECF No. 40 at 2), so FCI Englewood became both the place where he is serving his custodial sentence for a prior crime and the place where he is being detained on the current charge.  He has been "housed in the Special Housing Unit (SHU) nearly the

entire time." (*Id.*)

Currently before the Court is King's Motion for Hearing and Review of Detention Order. (ECF No. 40.) King claims that the conditions in which he is confined are interfering with his access to his attorney, Ms. Sandra C. Freeman, and he asks that the detention order be modified to ensure such access.

The evidence King submits demonstrates that no hearing is necessary to resolve this motion. For the reasons explained below, the Court finds that the conditions of King's confinement have not interfered with his ability to consult with Ms. Freeman. The Court therefore leaves Magistrate Judge Hegarty's detention order undisturbed.

## I. DETENTION PRESUMPTIONS & STANDARD OF REVIEW

### A.   Initial Standard

The Court "shall order the detention of the [defendant] before trial" if the Court finds, after a hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In a typical case, this determination may involve a variety of presumptions, burdens, and factors to consider. *See id*. § 3142(e)–(g); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003); *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991). In this case, however, Judge Hegarty recognized that most of the analysis "appear[ed] to be moot" because King is currently in BOP custody serving a prison sentence "until at least August 2023." (ECF No. 12 at 4.) Thus, King would remain in some sort of custody regardless of any finding under § 3142.

Also, as relevant here, the statute provides, "In a detention order issued under subsection (e) of this section, the judicial officer shall * * * direct that the person be

2

afforded reasonable opportunity for private consultation with counsel[.]" 18 U.S.C. § 3142(i)(3).  Judge Hegarty included this language in his detention order.  (ECF No. 12 at 1.)

**B.     Review**

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the [district court], a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  Under the circumstances, King can only move for amendment of Judge Hegarty's order, not revocation.  (*See* ECF No. 40 at 7–8 ("Mr. King concedes that he is still serving a sentence . . . .").)

The district judge reviews the magistrate judge's decision *de novo*. *Cisneros*, 328 F.3d at 616 n.1.

> *De novo* review, however, does not necessarily mean holding an evidentiary hearing.  Although a district court may start from scratch and take evidence, it may also review the evidence that was before the magistrate judge and make its own independent determination as to whether the magistrate judge's findings and detention order are correct.  This is a matter of discretion for the district court.

*United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2010) (internal quotation marks and citations omitted).

## II. BACKGROUND

King was arrested on August 26, 2019, had his initial appearance that same day, and was appointed an attorney from the Office of the Federal Public Defender.  (ECF Nos. 4–8.)  In mid-September 2019, King elected to retain Ms. Freeman and discharge his public defender.  (*See* ECF No. 13.)  Ms. Freeman entered her appearance on King's behalf on September 25, 2019.  (ECF No. 17.)  According to her affidavit, she met privately with King that same day at FCI Englewood.  (ECF No. 40-3 at 4.)

At their September 25 meeting, Ms. Freeman learned that King could not read well without glasses. (*Id.* at 4–5.) King says that BOP was denying him glasses at this time. (ECF No. 40-1 at 7.) Thus, Ms. Freeman "had to read and narrate all documents to [him] . . . . As a result, [she] attempted to visit him at least two times a week for visits lasting approximately sixty to ninety minutes." (ECF No. 40-3 at 4–5.)

According to Ms. Freeman's affidavit, her history of visits and attempted visits was as follows (all dates listed without explanation are dates on which Ms. Freeman visited in-person without problem):

- October 4, 2019
- October 9, 2019: phone call that was being monitored.
- October 18, 2019
- October 22, 2019
- November 11, 2019: turned away because she was attempting to visit with her paralegal.
- November 12, 2019: turned away for the same reason.
- November 15, 2019
- November 19, 2019
- November 22, 2019
- November 25, 2019: unable to visit because Mr. King's counselor said that he had not received the visit request in time.
- November 27, 2019
- December 5, 2019
- December 7, 2019

- December 11, 2019

- December 13, 2019

- December 17, 2019: turned away because Mr. King's counselor had not informed prison staff of Ms. Freeman's request to visit.

- December 27, 2019

- January 2, 2020: unable to visit because Mr. King's counselor said that he had not received the visit request in time.

- January 3, 2020: in-person visit "without issue," and Mr. King had received glasses by this point.

- January 8, 2020

- January 10, 2020

- January 14, 2020: turned away because Mr. King's counselor had not informed prison staff of Ms. Freeman's request to visit.

- January 21, 2020

- January 22, 2020

- January 29, 2020

- January 30, 2020

- February 3, 2020: unable to visit because Mr. King's counselor was on vacation.

- February 5, 2020

- February 6, 2020

- February 10, 2020

- February 21, 2020: request for a legal phone call denied by Mr. King's

      counselor.

- February 25, 2020: phone call during which a guard was standing next to Mr. King's cell the entire time, and the guard disconnected the call when Ms. Freeman "was attempting to advise Mr. King about his potential rights and remedies" with respect to a recent incident "when Mr. King's partner was locked in the SHU."

- February 27, 2020: phone call during which a guard was standing "nearby" the entire time.

- March 6, 2020

(*Id.* at 4–10.)

King further complains that he is unjustifiably being held in SHU; that he is being denied phone call privileges (other than with his attorney), medical care (such as his glasses, until January 3, 2020), visits with family, and hygiene items; that his mail is being unjustifiably monitored and interfered with; and that he has been retaliated against for making complaints. (ECF No. 40-1 at 7–9.)

### III.  ANALYSIS

As noted, orders of detention must "direct that the [detainee] be afforded reasonable opportunity for private consultation with counsel[.]" 18 U.S.C. § 3142(i)(3). In addition,

> [t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

*Id.* § 3142(i). Under both authorities, district courts have power to enter orders ensuring

6

that a pretrial detainee's reasonable opportunity to consult with counsel is respected. *See Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995); *see also United States v. Johnson*, 225 F. Supp. 2d 982, 1005–06 (N.D. Iowa 2002) (surveying additional authorities on this topic).

By any metric, King has had more than ample opportunity to visit in-person, unmonitored, with Ms. Freeman. Her affidavit shows that she met with him without incident twenty-four times between September 25, 2019, and March 6, 2020. (She filed the instant motion on King's behalf on March 10, 2020.) This is not a complex, multi-count, multi-defendant case. King faces a single count of assaulting a prison officer. The Court is frankly surprised that such an indictment could generate so much to talk about. Even prior to January 3, 2020, when Ms. Freeman allegedly needed to read every court filing to King due to his lack of glasses, the case generated only thirty-one docket entries. All of them—save for the two-page indictment—were of the case-management variety.

The Court recognizes that King and Ms. Freeman have never had an entirely unmonitored phone call. King does not inform the Court what FCI Englewood's phone call policies are, but the inability to have unmonitored phone calls does not change the Court's analysis because King has had numerous in-person visits with Ms. Freeman. Thus, under the circumstances, King has been "afforded reasonable opportunity for private consultation with counsel[.]" 18 U.S.C. § 3142(i)(3).[1]

As for King's various other complaints (about his administrative classification,

---

[1] King has not alleged that (i) unmonitored phone calls are particularly important in light of visitation restrictions recently implemented due to COVID-19, and (ii) unmonitored phone calls are nonetheless being denied. (*See* ECF Nos. 40, 54.)

7

retaliation, denial of medical care, and so forth), the Court agrees with the United States District Court for the Northern District of Illinois that, "[a]bsent any evidence that the conditions of confinement interfere with his right to counsel, [King] may only challenge his [conditions of confinement] through a civil action." *United States v. Arnaout*, 2002 WL 31744654, at *2 (N.D. Ill. Dec. 6, 2002).  If the case were otherwise, pretrial detainees could evade the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  King presents no evidence that his conditions of confinement have interfered with his ability to consult with his attorney, privately and in-person.  Thus, he must pursue his grievances, if at all, through civil litigation, not in the guise of a review of his detention order.

## IV.  CONCLUSION

For the reasons set forth above, King's Motion for Hearing and Review of Detention Order (ECF No. 40) is DENIED and Magistrate Judge Hegarty's August 29, 2019 detention order (ECF No. 12) is AFFIRMED.

Dated this 16th day of April, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge