IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

CASE NO. 19-CR-00257-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

ERIC KING,

Defendant

---

DEFENSE MOTION FOR COMPETENCY EVALUATION PURSUANT TO 18 U.S.C. §4241

Comes now Mr. Eric King, Defendant, by counsel, to move this Court to order that Mr. King be evaluated to determine whether or not he is competent to stand trial in accordance with the guarantees of Due Process and 18 U.S.C §4241. Mr. King and counsel request that the Court order that the evaluation be conducted by Denver-based forensic psychiatrist Dr. Susan Bograd, who is qualified as an expert in the field of forensic psychiatry and competent to conduct the evaluation per 18 U.S.C. §4247(b). The Government takes no position on whether an evaluation should be ordered, but does object to the request that Dr. Susan Bograd be appointed as the competency evaluator in this matter.

In support of this request, Mr. King and counsel state the following:

**I.   Statement of Relevant Facts**

1

The accusation in the indictment is alleged to have occurred at FCI Florence on August 17, 2018, after an Administrative Lieutenant ordered Mr. King to a purported interview in a storage room. FCI Florence officers who apprehended Mr. King in the storage room put Mr. King on the ground, handcuffed him, and moved him into the yard of the prison where they strapped him into a special restraint chair and carried him to the Special Housing Unit (SHU). Information provided by the government shows that BOP officers heard Mr. King say that the Administrative Lieutenant hit him and that Mr. King was defending himself. A brief medical assessment performed in the FCI Florence SHU on August 17, 2018 shows that Mr. King complained of trouble breathing and reported pain in his head described as a "7 out of 10." The government provided several photos and videos of Mr. King taken in the hours and days following August 17, 2018 which clearly show that Mr. King had injuries and bruising to his face. *See e.g.,* Docket No. 33, Ex. 5. Following the brief medical assessment, Mr. King was "four point" shackled to the corners of a bed with handcuffs and left alone in that position for at least five hours. *See* Docket No. 33, Ex. 6. Discovery provided by the government shows that Mr. King was unable to move his arms or legs, drink water, or use the toilet during the entire period, and that he reported to staff that he urinated on himself. Afterwards, Mr. King was transferred to isolation in the SHU at USP Florence, where he stayed until he was interrogated by BOP Special Investigative Service (SIS) officers on August 20, 2018.

Counsel has reason to believe that Mr. King may have a brain injury and/or psychological disorder, and that his condition has deteriorated to the point where he now lacks the capacity to rationally consult with counsel and to assist counsel in his own defense. Mr. King has trouble

retaining information he indicated he understood at the time it was communicated to him, difficulty understanding implications of component pieces of information, and displays signs of compromised executive functioning[1]. Counsel first raised concerns regarding Mr. King's competency to the government in November 2019 and made repeated requests to the BOP for Mr. King's medical records to which the BOP was non-responsive. Prior to the covid-19 pandemic, counsel made extensive efforts to limit the length and increase the frequency of visits with Mr. King as a way of accommodating Mr. King's needs and ability level. Counsel has raised Mr. King's neurological and possible competency issues in previous pleadings (Docket No. 33 ¶6)(Docket No. 54, 4-5), but did not have documentation confirming these concerns until very recently. Counsel sent a request to the United States Attorney Mr. King's medical records from the government pursuant to Rule 16 in January, and the government did not provide these records until May 7, 2020. Counsel immediately reviewed the records and began reaching out to find a suitable evaluator who is also willing to conduct prison/jail evaluations at this time.  Counsel's review of the records and the deterioration of Mr. King's condition compel counsel to make the instant motion now, even without Mr. King's consent.

      Whatever the cause, it is clear that Mr. King's mental, cognitive, and neurological health issues have been impairing Mr. King's ability to (1) retain, communicate, and act upon concepts about discovery and trial strategy, (2) assist counsel in simple aspects of investigating this case and preparing for trial, and (3) understand and consider counsel's advice. As a result, Mr. King is

---

1 Executive functioning are the neurocognitive processes that initiate and inhibit movement and behaviors, constitute the abilities to plan, initiate new tasks, stop, judge, assess options and consequences, reason, self-monitor and self-regulate, and recognize social cues; they also encompass language processing, mental flexibility, reasoning (deductive and inductive), working memory, abstract thinking, incorporating new information, and strategic inquiry. In short, executive functions are the very capacities necessary to be competent.

unable to meaningfully assist counsel in his defense. Based on Mr. King's medical records from 2016-2020, information provided to counsel in discovery, and Mr. King's status and interactions with counsel and others over the past nine months[2], there is reasonable cause to believe that Mr. King may presently be suffering from a psychological illness, brain injury, or combination of illness and injury such that he is unable to rationally consult with counsel or be of assistance in his own defense.

Counsel has contacted Dr. Susan Bograd regarding a possible evaluation of Mr. King. Dr. Bograd is a Denver-based psychiatrist who is licensed as required by 18 U.S.C. §4247(b). Exhibit 1: Curriculum Vitae of Dr. Susan Bograd. She indicated that she is available to perform such an evaluation and that, if designated by the Court, she will need to visit Mr. King for interviewing on at least three occasions, and that she estimates needing thirty (30) hours to review case documentation (to include discovery, medical records, and collateral source material), meet with Mr. King, and compose an evaluation containing her opinion.  Exhibit 2: May 30, 2020 letter from Dr. Susan Bograd.

**II. The Court Should Order a Competency Evaluation**

The Constitution prohibits the trial of a defendant who lacks mental competency. I*ndiana v. Edwards*, 554 U.S. 164, 170 (2008). A motion requesting a competency determination must establish "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in

---

2   Further disclosure of the facts and circumstances underlying this request without *ex parte* protection will compromise counsel's duties of confidentiality.

his defense." 18 U.S.C. § 4241(a). Defense counsel may make a motion requesting a competency evaluation, even against a client's wishes, because "the criminal lawyer's obligation to advocate the positions of his client is dependent on the client being mentally competent to stand trial." *See United States v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1998).

A competency evaluation is currently necessary to determine Mr. King's capacity to retain new information, to effectively integrate new or changing information into his decision-making process, to pay attention at trial and remember what occurred, to understand and use information to make reasonable decisions related to his defense, and whether Mr. King has sufficient impulse control to maintain proper trial courtroom decorum. The opinion of an unbiased expert is necessary, as counsel and the Court are not qualified to either diagnose or dismiss the plethora cognitive impairments (memory loss, lack of ability to sustain attention, and inability to retain critical information), physical symptoms (headaches, blurred vision, dizziness, nausea), and psychological symptoms Mr. King displays that have implications for competence to stand trial. The accumulation of evidence collected during the months that this case has been pending – to include Mr. King's recent suicide attempt and placement on a Suicide Management Plan for at least a month – requires expert evaluation and opinion.

Upon a showing of reasonable cause, the Court shall order a competency evaluation and hearing 18 U.S.C. § 4241(a). The test for competency to stand trial asks whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000)

(quotations omitted); see also *Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *United States v. Deshazer*, 554 F.3d 1281, 1286 (10th Cir. 2009). In this matter, there is reasonable cause to believe that Mr. King is suffering from a a psychological illness, brain injury, or combination of illness and injury such that he is unable to rationally consult with counsel or be of assistance in his own defense.

The law is clear that any periods of delay resulting from "any examinations, to determine the mental competency . . . of the defendant" are excluded from computation of time by which trial must commence under the Speedy Trial Act.  18 U.S.C. § 3161(h)(1)(A). Counsel requests that all deadlines in the case be vacated, including the trial currently set for August 10, 2020. Mr. King cannot communicate with Counsel and is unable to consent to this request.

**III. The Court Should Designate Dr. Bograd to Conduct the Evaluation**

In light of the statutory time constraints applicable to evaluations to determine competency, the need for economic efficiency, Dr. Bograd's qualifications, the risk of bias affecting the evaluation, and the risk of covid-19 associated with prison transfers, the defense would ask the Court to designate Dr. Bograd for a local evaluation. The government objects to this request and maintains the position that a BOP physician should do the evaluation in the first instance, as that is how these evaluations are typically done.

Before holding a competency hearing, a "court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4241(b). For the purpose of conducting such an examination, the Court may commit the defendant to the custody of the Attorney General for a reasonably period, not to exceed 45 days, for placement in a suitable facility. 18 U.S.C. § 4247(b). Unless impracticable, the examination is to be conducted in the suitable facility closest to the court. See 18 U.S.C. § 4247(b). The statutes require that each evaluator designated by the Court be "a licensed or certified psychiatrist or psychologist." Prior to revision, the Department of Justice Manual 9-9.110 recommended that any initial competency evaluation be done locally, citing *In re Newchurch*, 807 F.2d 404 (5th Cir. 1986).

Counsel is given to understand that in the District of Colorado, defendants ordered to undergo competency evaluations pursuant to §4241 are often sent to facilities outside of Colorado unless the Court specifies a local evaluator in its order. Judges in the District of Colorado have referred cases to Dr. Bograd for competency evaluations numerous times, and Dr. Bograd was most recently designated as an evaluator in this district on May 29, 2020. *See United States v. Tate*, 1:12-cr-00016, Doc. 53 (May 29, 2020). Another factor the Court should consider is modified BOP transfer and housing processes in light of covid-19. As of June 9, 2020 BOP reports "confirmed active" (as opposed to recovered or inactive) cases of covid-19 at 62 BOP facilities. None of the facilities with "confirmed active" cases are in Colorado, and the government's request for a BOP psychiatrist to conduct the evaluation at another unknown

facility risks exposing Mr. King (and the Colorado prison and courtroom to which he will be returned) to covid-19. Finally, Mr. King is currently being prosecuted for an offense alleged to have occurred within the Bureau of Prisons and against BOP staff. Discovery provided by the government and evidence collected by the defense show a pattern of deliberate indifference to Mr. King's serious medical needs and multiple instances of medical record entries that are contradicted by other evidence. Medical records describe Mr. King as having symptoms of paranoia specifically related to BOP and his treatment therein. Given the risk of bias that could undermine an evaluation, an independent expert designated by the Court would be most appropriate.

Given the statutory time constraints applicable to evaluations to determine competency, the need for economic efficiency, Dr. Bograd's qualifications, the risk of bias related to the BOP, and the risk of covid-19 associated with prison transfers, the defense would ask the Court to designate Dr. Bograd for a local evaluation.

### IV. Conclusion

Counsel has reason to believe that Mr. King may have a brain injury and/or psychological disorder such that he lacks the capacity to rationally consult with counsel and to assist counsel in his own defense. Counsel now asks that this Court, pursuant to 18 U.S.C. §4241(b), order that an examination be conducted of Mr. King and that a report be filed with the Court pursuant to the provisions of 18 U.S.C. §4247(b) and (c). Counsel further requests that the Court appoint Dr. Susan Bograd to conduct the evaluation locally at the facility where Mr. King is currently

detained, and that the Court enter an order directing that Dr. Bograd be permitted to meet with and evaluate Mr. King on more than one occasion and in accordance with BOP's current professional visitation policies.

      Counsel has conferred with the government regarding these requests – the government takes no position on whether an evaluation should be ordered, but does object to Dr. Bograd acting as the court-designated expert.


Respectfully Submitted,
ERIC KING
By Counsel


*s/ Sandra C. Freeman*
SANDRA C. FREEMAN
Law Office of Sandra C. Freeman, LLC
7456 W. 5th Avenue, Suite 300
Lakewood, Colorado 80226
Telephone:    720-593-9004
Email:    sandra.c.freeman@gmail.com


*s/ Meghan D. Maurus*
MEGHAN D. MAURUS
2364 Paseo de las Americas, #104-301
Telephone:    917-204-1436
Email:    m.maurus16@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of this filing to following address:

Aaron Teitelbaum, Esq.
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: 303-454-0209
Email: aaron.teitelbaum@usdoj.gov

I further certify that I have mailed or served this filing with the non-CM/ECF Participant with this document:

Eric King, #27090-045
FCI Englewood
Federal Correctional Institution
9595 West Quincy Ave
Littleton, Colorado 80123

*s/ Sandra C. Freeman*
SANDRA C. FREEMAN
Law Office of Sandra C. Freeman, LLC.
7456 W. 5th Avenue, Suite 300
Lakewood, Colorado 80226
Telephone:     720-593-9004
Email:          sandra.c.freeman@gmail.com