## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Criminal Case No. 19-cr-00257-WJM**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**1.  ERIC KING,**

      **Defendant.**

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REQUIRE CERTAIN DOCUMENTS [DOC. 105]

---

The United States of America, by Acting United States Attorney Matthew T. Kirsch, and through Assistant United States Attorneys Valeria Spencer and Aaron Teitelbaum, herein responds to Defendant's Motion to Require Certain Documents [Doc. 105].

### INTRODUCTION

Defendant's Motion to Require Documents requests discovery of information in ten different categories, in the main focusing on Lt. Wilcox, the BOP officer attacked by inmate King.  The requests range from any past worker's compensation claims to Lt. Wilcox's entire 20-year career personnel file, to documents relating to other inmate incidents at BOP that have no relation to Lt. Wilcox or the assault at issue here at all, to a use of force incident that occurred in 2013. The government addresses each in turn.

As a threshold matter, the Government takes exception to King's Motion in several

respects relating to his burden to establish "materiality."   His recitation of alleged factual claims underlying the case at bar is slanted to create and inject "materiality" into his requests.   The section of Defendant's Motion entitled 'BACKGROUND' contains several inflated factual assertions on which the Defendant's claims of material need for discovery are predicated. When such allegations are corrected, many of the items requested in discovery by Defendant have no materiality and are simply overbroad requests that cast the discovery net far too widely.

## LEGAL AUTHORITY RELATING TO DISCOVERY

Federal Rule Criminal Procedure 16(a) provides for discovery of evidence from the government by a defendant.   Authorized discovery includes oral and written  statements of the defendant (subsection (a)(1)(A)and (B)); the defendant's prior  criminal record (subsection (a)(1)(D)); documents and tangible objects which are  material to the preparation of the defense or intended for use by the government as  evidence utilized in its case-in-chief in trial, or were obtained from or belong to the  defendant (subsection (a)(1)(E)); the results or reports of physical or mental  examinations and of scientific tests or experiments which are material to the preparation of the defense or are intended for use by the government as evidence in  case-in-chief at trial (subsection (a)(1)(F)); and a written summary of the testimony of  expert witnesses that the government intends to use during its case-in-chief at trial (subsection (a)(1)(G)).[1]   Virtually all of Defendant's requests fall within the materiality subsection (a)(1)(E).

Discovery under the Federal "Rules of Criminal Procedure is not intended to be as broad as in a civil case."   *Clay v. United States*, 397 F.2d 901, 915 (5th  Cir. 1968), *vacated on other grounds sub nom.*, *Giordano v. United States*, 394 U.S. 310 (1969).   Accordingly, Rule 16

---

1 Fed. R. Crim. P. 16(a)(1)(C) relates to organization defendants and has no applicability in this case.

requires the item to be disclosed in discovery to be "material" in preparing the defense. "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case [but] there must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v.Lujan*, 530 F.Supp. 2d 1224, 1234 (D.N.M. 2008)*; United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975) *(citations omitted)*. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality.'" *United States v. Agurs*, 427 U.S. 97, 109-10 (1976); *see also United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999). Rather, evidence is material under *Brady* if there is a reasonable probability that the result of the proceeding would be different without it. *Bowen v. Maryland*, 799 F.2d 593, 603 (10th Cir. 1986).

"Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id*.

> While the "materiality" standard of Rule 16 is not a direct codification of *Brady*, it is not substantively different. *See* Fed.R.Crim.P. 16 Advisory Committee Notes on 1974 amendments. Rule 16 includes two other categories of discoverable information in addition to "material" information, to ensure that the Government's disclosure obligation extends to information not otherwise material that was obtained from the defendant or would be used by the prosecution. *Id*. The materiality language of Rule 16 (a)(1)(E)(I) shows that "the drafters of the rule recognized the government's *Brady* obligation.*" United States v Jordan*, 316 F.3d 1215, 1250, n. 74 (11th Cir. 2003.)

*United States v. Weiss*, 2006 WL 1752373, *2 (D.Colo. June 21, 2006) (Babcock, C.J.).   As

discussed in *Weiss,* the Government need not disclose "facially non-exculpatory evidence" that "might possibly be favorable to the accused by inferential reasoning." *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir. 1988).   Additionally, "the Government need not disclose evidence that is only 'possibly useful to the defense but not likely to have changed the verdict.'" *United States v. Gonzalez- Montoya*, 161 F.3d 643, 650 (10th Cir. 1998) (cited in *Weiss*).

As previously touched upon, a defendant must make a prima-facie showing of materiality before he is entitled to obtain requested discovery.   *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).   "This materiality requirement in not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence 'will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Lujan*, 530 F. Supp. 2d at1243 (quoting *United States v. Lloyd*, 992 F.2d 348. 350-51 (D.C.Cir. 1993)).   "Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16." *Id. See also United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (Defendant must make a specific request for an item together with an explanation for how it will be helpful to the defense).   In short, Rule 16 cannot properly be used as an end run to obtain information that is non-discoverable under *Brady* and its progeny.

In *United States v. Williams*, 791 F.2d 1383 (9th Cir. 1986), the defendant was charged with escape from a prison facility.   He sought discovery of records relating to prison security measures and other information relating to prison authorities' prior knowledge of the escape

plan.   The request for discovery was denied and affirmed by the Ninth Circuit.   *Id.* at 1387

(citing *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984); *United States v. Duncan*, 693

F.2d 971, 979 (9th Cir. 1982), *cert. denied*, 461 U.S. 961 (1983).  The Ninth Circuit continued

by stating:

> The district court correctly balanced the competing interests in reaching its
> discovery ruling in the present case.   *See United States v. Mills*, 641 F.2d
> 785, 790 (9th Cir.), *cert. denied*, 454 U.S. 902 (1981); *United States v.
> Lanci*, 669 F.2d 391, 393 (6th Cir. 1982.)   After reviewing the disputed
> evidence in camera, the court concluded that the information sought to be
> discovered was not sufficiently material to overcome the government's
> compelling interests in inmate safety and prison security.   The district
> court, therefore, properly exercised its discretion by considering the
> competing interests and denying the discovery requests here at issue.

*Williams*, 791 F.2d at 1387.

        A specific articulation of materiality is required before a Court can or should order

disclosure of requested material.   Defendant's Motion fails to even attempt to establish a prima

facie case of materiality as to many of the requested items.   This case has been at issue since the

Indictment was returned on _____.   The government has responded time and again to discovery

requests and sought to have all issues resolved well prior to trial.   Notwithstanding the

government's requests, the Defendant waited until three weeks before trial to ask for ten

categories of documents. Except as noted below where the government will agree to produce

some of the requested information, the overbroad requests should be denied.

## REQUESTS FOR DISCLOSURE

### I.        Lt. Wilcox's job description as of the date of the assault

Defendant insists he needs the job description of lieutenants employed by BOP.   More

specifically he wants to know LT. Wilcox's job description, allegedly to determine whether Lt.

Wilcox was engaged in the scope of his official duties when he asked that inmate King be sent to the lieutenant's offices so King could be questioned about the email he had written that day about another lieutenant being assaulted.[2] Further Defendant asserts that Lt. Wilcox interviewing King about the email King sent was "arguably an SIS [Special Investigation Section] duty" without any information to support such a claim of division of responsibilities.   Attempting to divide up duties in such a rigid manner is wholly inaccurate and demonstrates a failure to understand the day-to-day workings of an institution where corrections officers, which include the entire BOP staff, interact with inmates repeatedly during the day and will single out inmates to talk with about specific matters as needed and when needed.   The language of the email was troubling enough in its professed glee about Lt. Estrada being assaulted by another inmate that morning that officers determined it was necessary to speak to King about the email right away.

In response to the request and to support its claim that Lt. Wilcox was acting within the scope of his employment responsibilities in attempting to speak to King, the government has provided in discovery the job description of lieutenants within the Bureau of Prisons. INV 1170-1189. A theme that is repeatedly stated in the job description is responsibility for maintaining the security of the institution. It is noted that "staff correctional responsibilities precede all others required by this position" (INV 1176), then stating that "[s]pecific correctional responsibilities include custody and supervision of inmates." (INV 1176).   The description also includes the following: "Security concerns that are inherent in a correctional environment further increase the extent and nature of complexity [of the job].   Incumbent has direct and frequent daily contact with inmates. … In addition to other duties, the staff are also responsible for maintaining security of the

---

2  The email King sent has been provided in Defendant's Motion, Attachment A.

institution through observation of inmate behavior, maintenance of discipline, … Security concerns are a regular and recurring part of the job."   INV 1177-1178. In describing the purpose of contacts with inmates, the job description states, "Contact with inmates are primarily to attempt to change their undesirable attitudes and behavior patterns towards socially acceptable behavior and to establish positive correctional attitudes and behavior by informal guidance and counseling." INV 1178. Another example of a lieutenant's authority to engage with inmates states, "All staff in the correctional facility , regardless of their occupations, are expected to perform law enforcement functions… The duties of this position require frequent direct contact with individuals in detention suspected or convicted of offenses against the criminal laws of the United States." INV 1179. As to responsibilities, the job description provides: "Incumbent investigates reported violations of prohibited acts … taking appropriate actions as dictated by the seriousness of the violation.   Conducts in-depth investigations of incidents which involve criminal activity within the institution…" Id.

In summoning King to the lieutenant's office and attempting to speak to him about the email that Lt. Wilcox was acting in the scope of his duties.

II.     Medical records derived from the hospital and clinic visits required to treat the injuries suffered by Lt. Wilcox when King took him by surprise and assaulted Lt. Wilcox.

The government has provided the complete records of medical visits to both St. Thomas More Hospital in Canon City and the Pueblo Bone and Joint Center.   This request did not require involvement by the Court had Defendant simply made a request directly to the government at an earlier date.

III.     Internal investigation documents from any Bureau of Prisons ("BOP") or Department

of Justice ("DOJ") investigation into King's allegations of Lt. Wilcox's alleged misconduct.

King alleged that Lt. Wilcox assaulted him. An internal investigation was conducted into those allegations. Discovery of the summary of the investigation and its conclusions has been provided to Defendant responsive to this request. INV 1167-1169. As demonstrated in the summary provided, an investigation was conducted and determined the allegations to be unfounded.[3]   The government did not provide the entire file which contains the underlying reports already provided in discovery.   The summary gives the Defendant what he seeks: evidence that an investigation into King's allegations was undertaken and completed with negative results.

IV.   Documentation of Wilcox's training and experience regarding working with mentally ill offenders.

King misrepresents the evidence in this case.[4]   King also conflates Lt. Wilcox's comments in general about his experience in questioning inmates and one statement he made that he had worked a post in the past with mentally ill offenders.   In fact, the two statements have nothing to do with one another.   King will have ample opportunity to question Lt. Wilcox on the stand about his decisions on August 17, 2018, in dealing with inmate King.   Providing specific information about Lt. Wilcox's post working with inmates who are mentally ill is not discoverable under any sections of Rule 16, nor it is *Brady* material.   Lt. Wilcox was employed by BOP for 20 years, 18 years as of the date he was assaulted by inmate King in 2018. It is safe

---

3  Defendant alleges the government at some point declined to prosecute this case. Motion at 8. That is categorically untrue and repeating it time and again does not make it so. And of course, the claim is irrelevant, because of course, King was indicted May 23, 2019.
4  It will be made manifest at trial through photographs of the scene and a diagram that Lt. Wilcox did not attempt to interview inmate King in a "closet" or "storage room."

to say that those 18 years of experience in handling inmates were brought to bear when he met with inmate King.

Notwithstanding its position that the information requested is immaterial, the government has obtained and has provided all of Lt. Wilcox's BOP training logs from 2000 to 2020 (after which Lt. Wilcox retired).  INV 1190-1215.

V.    Worker's compensation documentation.

Defendant has claimed that he must have the complete worker's compensation file Lt. Wilcox filed relating to the injuries he suffered from King's attack to be able to adequately cross-examine Lt. Wilcox.  Without reaching the accuracy of that assertion, the government has provided the worker's compensation documentation that Lt. Wilcox filed because of the injuries he suffered when Defendant attacked him without provocation.

Defendant is also seeking any worker's compensation claims that Wilcox may have filed from 2000-2018.  This is nothing more than a fishing expedition that is wholly immaterial to the case at bar. Defendant claims that Lt. Wilcox "placed his previous injuries on the job at issue by claiming to the FBI that he had never been seriously injured on the job" prior to being assaulted by King.  Whether or not Lt. Wilcox had been injured before by an inmate while he worked at BOP is not relevant, and Lt. Wilcox stating he had not been injured before does not in any way make the issue relevant.

Defendant alleges that prior worker's compensation claims that were denied can show bias on the part of Lt. Wilcox and therefore the government is bound to disclose any claims.  There is nothing whatsoever about any potential prior claims that could possibly show any incentive for Lt. Wilcox to falsify his testimony about his incident.  From the moment he was attacked, his

statements have been clear and unwavering, whether those statements were to law enforcement, medical professionals, worker's compensation, or BOP.   The government asks this Court to deny the overbroad and unduly burdensome request to require BOP to research and recover any worker's compensation claims filed by Lt. Wilcox over an 18-year period.

VI.     Lt. Wilcox's BOP employment file.

King is requesting Lt. Wilcox's entire personnel file, without any limitation. The Government will comply with its obligation to disclose any information that has potential exculpatory or impeachment information or value under *Giglio* and *Brady*. Such obligations, however, do not entitle blanket disclosure of all information in Lt. Wilcox's personnel file.   The file will contain information on family, residence, pay, vacation and sick leave, evaluations and many other matters which are personal to the employee. King does not and cannot make a showing of relevance of that personal information.   The government is cognizant of its ongoing obligations and will review material consistent with *Giglio* and *Brady* mandates and provide the relevant documents.

VII.    The Incident Report regarding restraint and use of force when removing inmate
        Marcus Wilson from his cell in 2013.

The government has provided the incident report that BOP was able to obtain from its records regarding the use of force used to extract inmate Wilson from his cell 8 years. In providing the specific document requested the government in no way concedes that the report is relevant or required by any rules governing its discovery obligations. Indeed, the Government is adamant that the Bureau of Prisons' ability and willingness to gather information unrelated to this case does not create an obligation to provide it, and surely does not constitute a right of the

Defendant to obtain discovery to which he is not entitled and has made no showing.

For example, Defendant also seeks any other documentation about any use of force incidents in which Lt. Wilcox was involved during his 20-year career with BOP.   This request is overbroad and immaterial. The Defendant once again has failed to make a prima-facie showing of materiality before he is entitled to obtain these documents he seeks.   *Mandel*, 914 F.2d 1215, 1219.   The Defendant cannot make that showing.   The Wilson case involved what is known as a "use of force extraction."   Use of force may be required when an inmate refuses to obey orders to allow himself to be cuffed to be removed from his cell. The inmate is repeatedly ordered to step up to be cuffed and only after those repeated demands are ignored is a use of force team assembled. There are specific procedures and policies in place to which BOP professionals adhere to remove an unwilling inmate from his cell.   The extraction involves many personnel and typically is videotaped for the protection of all parties.

A use of force extraction is much different than the case here where an inmate assaulted a corrections officer.   This one-on-one assault was without provocation and was dissimilar to use of force extractions in all pertinent particulars.   The request for records from "the last 5 years where Lt. Wilcox was involved in a documented use of force situation" is overbroad and immaterial to the issues in this case.   King has made clear he is alleging Wilcox was the aggressor and he merely defended himself.   There is no probative value in King cross-examining Lt. Wilcox about any use of force situations he was involved in at BOP.   Use of force situations do not involve self-defense or questions of who the aggressor was.

Finally, King's claims that such records might establish FRE 404(b) evidence misapprehends the prohibitions in 404(b) which specifically precludes use of prior incidents to prove a person's

character to show the actor acted in conformity with that character in the instant offense.

VIII.    Written communications to Wilcox about the Estrada assault.

All communications were previously provided to King about any communications Wilcox

had about the inmate assault on Lt. Estrada the morning of August 17, 2018.

IX.    Estrada assault incident report and accompanying documentation.

King requests information about an assault that occurred earlier on the date of offense. King

asserts he needs that information to prove that Lt. Kammrad was not working on the reports

about the assault as the lieutenant states he was when he heard noises of an altercation in the next

room.   None of the BOP reports contain any type of time stamp to show when the reports were

prepared, and certainly not the times the reports were in process.   The reports about the

unrelated assault are immaterial, irrelevant and do not contain the information that King is

seeking.

X.    Discipline hearing ("DHO") documents.

The government has informed the defendant of the FRE 404(b) it intends to offer at trial and

produced the necessary documentation relevant to that evidence. If the government intends to use

any other documentation in cross examination should the defendant elect to take the stand and

testify on his own behalf, the government will comply with any discovery obligation it may have

to disclose those documents as they are pulled in preparation for Defendant's possible testimony.

**CONCLUSION**

The government has given serious consideration and exercised due diligence in analyzing

the propriety of King's requests for specific discovery.   The government has provided all

materials consistent with its discovery obligations and has provided additional material in

response to requests that were beyond those obligations. The government understands its obligation and that those obligations are ongoing; but they are not limitless or unbounded. The Defendant has the obligation of making a minimal threshold showing of materiality as to the requested items. As discussed and articulated above, Defendant's specific discovery requests are generally not supported by such a showing. For these reasons, the government asks the Court to deny the Defendant's Motion to Require Certain Documents as outlined above.

Dated: September 24, 2021.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:      *s/Valeria N. Spencer*
VALERIA N. SPENCER
Assistant United States Attorney
1801 California, Suite 1600
Denver, CO 80202
Telephone:  303-454-0100
Fax:  303-454-0402
Email: Valeria.Spencer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, September 24, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

_s/Portia Peter_
Portia Peter
Legal Assistant
United States Attorney's Office