IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 19-cr-257-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC KING,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR PREINDICTMENT DELAY**

---

    The Government charges Defendant Eric King with one count of assaulting or obstructing a federal official in violation of 18 U.S.C. § 111(a)(1), (b).  (ECF No. 1.)

    Before the Court is Defendant's Motion to Dismiss for Preindictment Delay ("Motion to Dismiss"), filed September 13, 2021.  (ECF No. 103.)  The Government responded on September 24, 2021.  (ECF No. 138.)  For the reasons set forth herein, the Motion to Dismiss is denied.

### I. BACKGROUND[1]

    The Indictment in this case stems from an August 17, 2018 encounter between Defendant, an inmate at Federal Correctional Institution ("FCI") Florence, and FCI

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  This factual summary is taken from the parties' briefs on this Motion to Dismiss and other pending motions and supporting exhibits.

    The Court notes that the Motion to Dismiss appears to contain typographical errors related to certain dates.  (*See* ECF No. 103 at 1–2.)

Florence Administrative Lieutenant Donald Wilcox.  (ECF No. 103 at 1.)  In the morning of August 17, 2018, a correctional officer lieutenant was assaulted by an inmate (not Defendant) at FCI Florence.  (*See* ECF Nos. 120-1, 120-2.)  Following that incident, Defendant sent an e-mail to his significant other regarding that assault.  (ECF No. 120-3.)  In pertinent part, the e-mail stated:

> So you want to hear great news?!  A newer Paisa ROCKED A LT!!  That's why we were locked down for a little bit lolol!  One for the home team!  I hope that the weight of every prisoner who has been disrespected, felt belittled, felt less than human by any guard or Lt ever was behind that punch.  Wish I would have gotten to see it or experience it via VR.  This is a win for every prisoner ever.  Hard to stop smiling thinking about it.

(ECF No. 120-3.)  According to Lieutenant Wilcox's interview report, Special Investigative Services ("SIS") discovered Defendant's e-mail, and SIS Lieutenant Robert Cordova indicated to Lieutenant Wilcox that Defendant needed to be questioned about the e-mail to determine whether he posed a threat to Bureau of Prisons ("BOP") staff. (ECF No. 120-1.)  Thus, Lieutenant Wilcox arranged to interview Defendant in the lieutenants' office at FCI Florence.  (ECF No. 120-1 at 1.)  By contrast, Defendant asserts that he was taken to a mop closet to be interviewed.  (ECF No. 103 at 1; ECF No. 103-2 at 3.)

According to Defendant, he was provoked while in the closet, and he hit Lieutenant Wilcox in response—to defend himself.  (ECF No. 103-2 at 3.)  Lieutenant Wilcox contends that as he began asking Defendant about the e-mail he sent earlier that day, Defendant struck Lieutenant Wilcox in the face with a closed fist.  (ECF No. 120-1 at 2.)  As a result of the assault, Lieutenant Wilcox suffered a broken nose, damage to blood vessels in his eye, and a finger injury.  (*Id.* at 3–4.)

2

BOP officials investigated the matter and referred it to the Federal Bureau of Investigation ("FBI") and the United States Attorney's office for the District of Colorado for potential prosecution, and the case was accepted for prosecution on the same day of the alleged offense.  (ECF No. 103 at 1; ECF No. 120-5 at 3.)

Defendant states that after the alleged assault on August 17, 2018, he was placed in a restraint chair, called a "Striker chair," that was used to transport him to the Special Housing Unit ("SHU") at FCI Florence.  (ECF No. 113 at 3.)  A medical examination was conducted, and then Defendant was placed into hard, four-point restraints for approximately five hours.  (*Id.*)  The four-point restraints were removed when Defendant was taken to USP Florence on August 17, 2018.  (*Id.* at 4.)  According to Defendant, he was "held continuously in solitary confinement since August 18, 2018, was arbitrarily transported through six different notorious [B]ureau of [P]rison facilities, . . . and assaulted by other prisoners between the date of the alleged offense and his arrival at FCI Englewood on a writ shortly before his first appearance in this Court on August 27, 2019."  (*Id.*)  He states that "[t]hese repeated arbitrary transfers and conditions of confinement severely impacted [his] physical and mental health."  (*Id.*)

On August 20, 2018, Defendant was given his *Miranda* warnings and interviewed at FCI Florence by BOP Lieutenants Silva and Erb about the assault.  (ECF No. 103 at 2; ECF No. 120-6; ECF No. 120-12.)  During the interview, Defendant stated, among other things, that Lieutenant Wilcox assaulted him and that he punched Lieutenant Wilcox in self-defense.  (ECF No. 120-6 at 4:00–9:00.)

Defendant was transferred to USP Leavenworth on August 21, 2018.  (ECF No. 138 at 2.)  In a November 2018 Inmate Investigative Report, the investigator noted that

3

Defendant "could not be interviewed about this incident as he had requested an attorney." (ECF No. 103-1 at 2.) Defendant states that in early December 2018,[2] officials at USP Leavenworth "told [him] that the government declined to prosecute the charges."[3] (ECF No. 103 at 2.)

A disciplinary hearing was held on January 31, 2019 at USP Leavenworth. (ECF No. 138 at 2; ECF No. 121, 120-9.) According to the Government, there are two "mostly identical" versions of the February 21, 2019 DHO Report. (ECF No. 138 at 2.) The first version of the report was produced to Defendant's prior counsel in 2019. (ECF No. 138 at 2–3.) The second version was received by the Government on September 21, 2021 and produced to defense counsel on September 23, 2021. (*Id.* at 3.)

In both versions of the DHO Report, Defendant stated at the hearing, in substance, "I was take [*sic*] to the mop closet to be interviewed, not the Lieutenant's office. That is where they take people and try to get them to snitch. I was provoked, that is why I hit him. To defend myself. He hit me." (ECF No. 121 at 1, ECF No. 120-9 at 1.) Defendant was advised of his rights at the hearing, in writing, on January 22, 2019, nine days before the hearing. (ECF No. 120-10.) Defendant signed the advisement of rights form. (*Id.*) The advisement of rights informed Defendant, among other things, that he had a "right to present a statement or to remain silent," and that his "silence may

---

[2] It appears as though there is a typographical error regarding this date in the Motion to Dismiss. In the Motion to Dismiss, Defendant states that in "early December 2019, corrections officials at USP Leavenworth told [him] that the government declined to prosecute the charges." (ECF No. 103 at 2.) However, in the context of the Motion to Dismiss and relevant events, it appears as though Defendant meant to write December 2018.

[3] Defendant cites no evidence directly supporting the statement that he was told the Government declined to prosecute the case against him. (ECF No. 103 at 2.) He does, however, cite evidence that he states corroborates this statement. (ECF No. 121.) Defendant points to the Disciplinary Hearing Officer ("DHO") Report related to the incident which states that the "FBI/AUSA did decline to prosecute . . . ." (*Id.* at 3.)

4

be used to draw an adverse inference against [Defendant]. . . . However, [Defendant's] silence alone may not be used to support a finding that [Defendant] committed a prohibited act." (*Id.*)

According to the first version of the DHO Report, "The FBI/AUSA did decline to prosecute on December 11, 2018, at which time it was released for administrative processing." (ECF No. 121 at 2.)  However, the second version states that "The FBI/AUSA accepted this case for prosecution on December 11, 2018, however permission was granted to proceed with administrative processing."  (ECF No. 120-9 at 2.)

Correspondence between two BOP personnel on February 6, 2019—15 days before the disciplinary hearing report was issued—reflects that BOP employee Mack Word inquired of Lieutenant Robert Cordova, who was employed at FCI Florence on the day of the alleged assault, whether Defendant was going to be prosecuted.  (ECF No. 120-11.)  Cordova replied, "Absolutely," and referred Word to an attachment to his email, which contained an inmate investigative report regarding the assault on August 17, 2018.  (*Id.*)

Ultimately, both reports reflect that Defendant was "found to have committed the prohibited act."  (ECF No. 120-9 at 5; ECF No. 121 at 5.)  In the Motion to Dismiss, Defendant states that his allegation of staff misconduct at FCI Florence prompted the DHO to send a memorandum to Warden N. English of USP Leavenworth advising him that Defendant admitted to striking the officer and made an allegation of staff misconduct.  (ECF No. 103-4.)

In February 2019, FCI Florence staff forwarded the DHO Report to the FBI.

5

(ECF No. 103-5.)  Before seeking an indictment, the prosecution team met with Lieutenant Wilcox and Lieutenant Jeffrey Kammrad, who also escorted Defendant into the room where the incident occurred, on April 15, 2019 and reinterviewed those officers.  (ECF No. 103-6; ECF No. 138 at 3; ECF No. 138-1; ECF No. 124-5.)  The grand jury returned the Indictment against Defendant in May 2019.  (ECF No. 1.)

## II. LEGAL STANDARD

Pre-indictment delay is a matter that receives limited protection under the Due Process Clause of the Fifth Amendment because the relevant statute of limitations is the primary safeguard against possible prejudice resulting from pre-indictment delay. *United States v. Marion*, 404 U.S. 307, 322 (1971); *Toussie v. United States*, 397 U.S. 112, 114–15 (1970); *United States v. Johnson*, 120 F.3d 1107, 1110 (10th Cir. 1997). "The Due Process Clause warrants dismissal of indictments for preindictment delay only in exceptional circumstances." *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1988).  Instead, "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (citations and internal quotation marks omitted).

To determine whether pre-indictment delay rises to the extraordinary level warranting dismissal with prejudice,[4] a defendant must plead and prove by a preponderance of the evidence: (1) that the delay caused actual and substantial prejudice to the defendant; and (2) that the government delayed intentionally to gain a tactical advantage.  *Lovasco*, 431 U.S. at 789; *Johnson*, 120 F.3d at 1110.  With respect

---

[4] Dismissal based on pre-indictment delay, where appropriate, must be with prejudice. *See Johnson*, 120 F.3d at 1110 n.2.

to the second prong, the government's delay must be purposefully designed to gain a tactical advantage or to harass the defendant. *United States v. Beitscher*, 467 F.2d 269, 272 (10th Cir. 1972). Although the Court applies a shifting burden of production, the defendant has the ultimate burden of proof. *United States v. Comosona*, 614 F.2d 695, 697 (10th Cir. 1980) (per curiam). The Tenth Circuit has held consistently that it is not its function to second guess the timing of the filing of an indictment in the absence of proof of these elements. *United States v. Francisco*, 575 F.2d 815, 817 (10th Cir. 1978).

### III. ANALYSIS

In the Motion to Dismiss, Defendant argues that the nine-month delay in indictment in this matter prejudiced Defendant and provided the Government with a tactical advantage, "while also punitively harassing [Defendant]."[5] (ECF No. 103 at 4.) Specifically, Defendant contends that in November 2018, BOP officials at both FCI Florence and USP Leavenworth were on notice that Defendant had invoked his right to counsel and should not have been questioned regarding the events of August 17, 2018. (*Id.* at 5.) After the Government declined to prosecute Defendant, the BOP initiated disciplinary proceedings alleging that Defendant assaulted Lieutenant Wilcox, and during those proceedings, where Defendant states he was questioned without *Miranda* warnings,[6] Defendant states that he asserted self-defense in his admission to the charges. (*Id.*) He states these admissions were forwarded to the FBI and the United

---

[5] King concedes that the Indictment was returned within the statute of limitations. (ECF No. 103 at 4.)

[6] In the Motion to Dismiss, Defendant concedes that *Miranda* warnings are "not necessarily required in prison disciplinary proceedings." (ECF No. 103 at 5 (citing *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974); *Baxter v. Palmagiano*, 425 U.S. 308 (1976)).)

7

States Attorney's office, who then reinterviewed Lieutenants Wilcox and Kammrad in order to alter and/or bolster their statements, which prejudiced Defendant. (*Id.* at 6.)

Under these circumstances, Defendant argues that the Government gained a tactical advantage via its own declination to pursue charges and Defendant's reasonable reliance on that declination in the form of an "un-*Mirandized* admission" to the allegation and an explanation of the circumstances provided to the prosecution team. (*Id.* at 10.) Additionally, Defendant claims he was harassed in the period between the date of the allegation and his appearance before this Court in the form of multiple arbitrary prison transfers, being housed in administrative segregation without visits from loved ones or attorneys, being restricted from access to phone, mail, and e-mail. (*Id.* at 11.)

In response, the Government argues that Defendant has not shown prejudice because he has failed to produce any evidence that he was ever assured that he would not be prosecuted for the assault before he made statements at the disciplinary hearing; that his claims of self-defense and staff misconduct in January 2019 were not a surprise to law enforcement because he made similar allegations in his "*Mirandized* interview" on August 20, 2018; and the reports of interviews with Lieutenants Wilcox and Kammrad do not support Defendant's contentions that his statements at the disciplinary hearing were used to strengthen the Government's case. (ECF No. 138.) Additionally, the Government asserts that Defendant has not shown a purposeful delay by the Government to gain a tactical advantage. (*Id.* at 6.) Rather, the timing of the filing of the Indictment in May 2019 versus the additional interviews of Lieutenants Wilcox and Kammrad shows that the Government took time to conduct follow-up interviews of

important witnesses before seeking an indictment.  (*Id.*)

The Court need not analyze the first prong of the analysis, because Defendant has failed to establish the second prong of the apposite test.  Although Defendant characterizes the delay in bringing an indictment in this case as prejudicial, he fails to demonstrate that the Government intentionally and purposefully delayed bringing charges in order to gain a tactical advantage or harass him.

The Court reaches this conclusion based on the precise language used in the Motion to Dismiss to address the second prong.  Specifically, Defendant states that he

> . . . does not need to speculate about the government's motives because he has demonstrated that the government did in fact obtain a tactical advantage via the government's own declination to pursue charges and Mr. King's reasonable reliance on said declination: an un-Mirandized admission to the allegation and explanation of the circumstances provided to the prosecution team; the team later correctively re-interviewed the two witnesses implicated by Mr. King's allegations of staff misconduct.
>
> . . .
>
> Nor does Mr. King speculate whether government intended to harass him: he was in fact harassed in the period between the date of the allegation and his appearance before this Court.

(ECF No. 103 at 10–11.)

Numerous Tenth Circuit opinions—which Defendant cites in the Motion to Dismiss (*id.* at 6)—reject claims of prejudicial preindictment delay for failure to allege any motive by the government to delay or harass the defendant.  *See United States v. Wood*, 207 F.3d 1222, 1235 (10th Cir. 2000) (rejecting claim where defendant pointed to no evidence from which the court could infer that the government's delay was intentional for the purpose of gaining tactical advantage); *Johnson*, 120 F.3d at 1110

9

(no allegation of improper motive); *United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir. 1983) (no allegation or evidence of improper government motive). Defendant provides no authority supporting his argument that he need not provide the Court with proof that the government's delay was "*purposefully designed* to gain tactical advantage or to harass the defendant[]." *United States v. Revada*, 574 F.2d 1047, 1048 (10th Cir. 1978) (citation omitted) (emphasis added).

Regardless, Defendant has failed to show a "purposeful" delay by the Government to gain a tactical advantage. As an initial matter, the Indictment was undisputedly returned within the statute of limitations, undermining any claim of pre-indictment delay. (ECF No. 103 at 4.) Further, as the Government points out, there is no evidence that Defendant was assured he would not be prosecuted for the assaults before he made statements at the disciplinary hearing. Defendant's arguments that the February 21, 2019 DHO Report, dated nearly a month *after* the disciplinary hearing, "corroborates" his assertion is insufficient to demonstrate that he was told he would not be prosecuted before making the subject statements. (ECF No. 103 at 2.) While the existence of two versions of the DHO Report is indeed troubling to the Court, with regard to the specific issue joined in the instant Motion, it does not support Defendant's claim of pre-indictment delay.

Further, as the Government points out, the timing of the follow-up interviews with Lieutenants Wilcox and Kammrad in April 2019 and the subsequent filing of the indictment in May 2019 demonstrates that the Government took time to reinterview key witnesses before seeking an indictment. (ECF No. 38 at 6.) In the Motion to Dismiss, Defendant acknowledges that "[t]he law is clear that a good faith investigation justifies

even prejudicial preindictment delay, which should be contrasted with 'delay undertaken by the government solely to gain tactical advantage over the accused.'"  (ECF No. 103 at 10 (quoting *Lovasco*, 431 U.S. at 795).)  On this record, Defendant has failed to show purposeful delay by the Government to gain a tactical advantage.

Therefore, because Defendant has failed to meet his burden of proof, the Motion to Dismiss must be denied.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Preindictment Delay (ECF No. 103) is DENIED.

Dated this 28th day of September, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge