**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 19-cr-257-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ERIC KING,

      Defendant.

---

**ORDER DENYING IN PART AND DENYING AS MOOT IN PART
DEFENDANT'S MOTION TO REQUIRE CERTAIN DOCUMENTS**

---

The Government charges Defendant Eric King with one count of assaulting or obstructing a federal official in violation of 18 U.S.C. § 111(a)(1), (b).  (ECF No. 1.)

Before the Court is Defendant's Motion to Require Certain Documents ("Motion"), filed on September 13, 2021.  (ECF No. 105.)  The Government filed its response on September 24, 2021.  (ECF No. 141.)

The Court presumes familiarity with the events underlying this case, which are recounted elsewhere, and the history of this case.  (*See, e.g.*, ECF No. 145.)  For the reasons set forth herein, the Motion is denied in part and denied as moot in part.

### I. LEGAL STANDARDS

There is "no general constitutional right to discovery" in criminal proceedings. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Here, Defendant requests discovery under Federal Rule of Criminal Procedure 16, and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

A.      *Brady v. Maryland*

"The Constitution, as interpreted in *Brady*, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). *Brady* requires disclosure only of evidence that is both favorable to the accused, and "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also United States v. Allen*, 603 F.3d 1202, 1215 (10th Cir. 2010). A "reasonable probability," in turn, is a "probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682 (internal quotation marks omitted).

The Tenth Circuit also has stated that evidence is material if it "might meaningfully alter a defendant's choices before and during trial . . . [including] whether the defendant should testify." *Case v. Hatch*, 731 F.3d 1015 (10th Cir. 2013) (quoting *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (alterations in original; internal quotation marks omitted)). The Tenth Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994).

"To be material under *Brady*, undisclosed information or evidence acquired through that information must be admissible." *Banks v. Reynolds*, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995) (citation omitted). In *Cone v. Bell*, the Supreme Court noted:

> Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady*, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. *See*

> [*Kyles v. Whitley*, 514 U.S. [419, 437 (1995)] ("[T]he rule in [*Bagley*] (and, hence, in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)").  *See also* ABA Model Rules of Professional Conduct 3.8(d) (2008) ("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal").  As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure.

556 U.S. 449, 470 n.15 (2009).  The Government bears the burden of producing exculpatory materials; a defendant has no obligation to first note that such materials exist.  *See Kyles*, 514 U.S. at 437 (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached"); *United States v. Padilla*, 2011 WL 1103876, at *6 (D.N.M. Mar. 14, 2011).  This obligation means that the Government must "volunteer exculpatory evidence never requested, or requested only in a general way."  *Kyles*, 514 U.S. at 433.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'"  *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975), *cert. denied*, 425 U.S. 905 (1976)); *accord United States v. Kraemer*, 810 F.2d 173, 178 (8th Cir. 1987) (explaining that the prosecution is not required "to search out exculpatory evidence for the defendant").  On the other hand, "a prosecutor's office

cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case."  *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984).  "A prosecutor must disclose information of which it has knowledge and access."  *Padilla*, 2011 WL 1103876, at *7 (citing *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989)).  "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'"  *Id.* (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).  "A prosecutor does not have a duty, however, to obtain evidence from third parties."  *Id.* (citing *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001) (observing that *Brady* does not oblige the government to obtain evidence from third parties)).

**B.**     **Rule 16**

Rule 16 provides that the court regulates discovery.  Fed. R. Crim. P. 16(d).  "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  Further, Rule 16(a)(1)(E) provides:

> (E) Documents and Objects.  Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item it its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

"Rule 16 is 'broader than *Brady'* in that it mandates disclosure of any material

information, whether exculpatory or not." *United States v. Smith*, 2017 WL 3172790, at

*2 (D.N.M. May 16, 2017) (citation omitted).  But "Rule 16 does not authorize a blanket

request to see the prosecution's file," and a defendant may not use the rule to engage in

a "fishing expedition."  *United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir.

1988) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)).

The defendant bears the burden of making a *prima facie* showing of materiality.

*See United States v. Garrison*, 2016 WL 8416755, at *3 (D. Colo. Sept. 22, 2016).

Evidence is "material" under Rule 16 if "there is a strong indication that it will play an

important role in uncovering admissible evidence, aiding witness preparation, . . . or

assisting impeachment or rebuttal."  *United States v. Graham*, 83 F.3d 1466, 1474 (D.C.

Cir. 1996) (internal quotation marks omitted, alterations in original) (quoting *United*

*States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)).

The Eleventh Circuit has explained that under Rule 16(a)(1)(E)(i), an item

> need not be disclosed unless the defendant demonstrates
> that it is material to the preparation of his defense.  A
> general description of the item will not suffice; neither will a
> conclusory argument that the requested item is material to
> the defense.  Rather, the defendant must make a specific
> request for the item together with an explanation of how it
> will be "helpful to the defense."  The defendant must "show"
> "more than that the item bears some abstract logical
> relationship to the issues in the case . . . .

*United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003) (internal citations,

quotations, and some alterations omitted).  "Although the materiality standard is not a

heavy burden, the Government need disclose Rule 16 material only if it enables the

defendant significantly to alter the quantum of proof in his favor."  *Graham*, 83 F.3d at

1474 (alterations, citations, and internal quotation marks omitted).

## II. ANALYSIS

Defendant has requested at least ten different categories of discovery in the Motion.  (ECF No. 105.)  The Court addresses these requests in turn.

### A.      Lt. Wilcox's job description on or about August 17, 2018

Defendant requests Lieutenant Wilcox's job description, explaining his official duties at the time he allegedly assaulted Defendant, because it is relevant to the element charged in the Indictment requiring proof that the officer was engaged in the performance of his official duties.  (ECF No. 105 at 6–7 (citing 18 U.S.C. § 111).)

In response, the Government states that it has provided in discovery the job description of lieutenants within the Bureau of Prisons.  (ECF No. 141 at 6 (citing INV 1170-1189).)

Based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion.  Accordingly, this portion of the Motion is denied as moot.

### B.      Medical Records regarding Lt. Wilcox's alleged injuries

Defendant requests medical records of Lieutenant Wilcox's visit to St. Thomas More Hospital after the incident.  (ECF No. 105 at 7.)  In response, the Government states that it has provided the complete records of medical visits to both St. Thomas More Hospital in Canon City and the Pueblo Bone and Joint Center.  (ECF No. 141 at 7.)

Based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion.  Accordingly, this portion of the Motion is denied as moot.

**C.** **All documentation of any/all investigation(s) and findings from internal BOP and/or DOJ investigations regarding Defendant's allegations of misconduct against Lt. Wilcox**

Defendant requests all documents related to the BOP and DOJ's internal investigations that were conducted concerning allegations of Lieutenant Wilcox's misconduct. (ECF No. 105 at 8–11.) In response the Government states that discovery of the summary of the investigation and its conclusions has been provided to Defendant. (ECF No. 141 at 8 (citing INV 1167–1169).) The Government states that it did not provide the entire file which contains the underlying reports already provided in discovery. (*Id.*)

Based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion. Accordingly, this portion of the Motion is denied as moot.

**D.** **Documentation of Lt. Wilcox's training and experience regarding "one of his posts working with mentally ill offenders."**

Defendant requests documentation of Lieutenant Wilcox's training and experience working with mentally ill offenders, arguing that Lieutenant Wilcox put this training at issue by claiming in FBI interviews that he relied on his training and experience when determining how and where to interview Defendant. (ECF No. 105 at 11.) In response, the Government takes the position that this request is immaterial; nonetheless, the Government states that it has obtained and has provided all of Lieutenant Wilcox's BOP training logs from 2000 to 2020 (after which Lieutenant Wilcox retired). (ECF No. 141 at 8–9 (citing INV 1190–1215).)

Based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion. Accordingly, this portion of

the Motion is denied as moot.

**E.    Documentation regarding Lt. Wilcox's August 2018 Workers Compensation claim, and Workers Compensation claims prior to August 17, 2018**

Defendant requests documentation regarding Lieutenant Wilcox's August 2018

workers compensation claim related to this incident.  (ECF No. 105 at 11.)  In addition,

Defendant requests documentation of all of Lieutenant Wilcox's workers compensation

claims before August 17, 2018, arguing that he placed his previous injuries on the job at

issue by claiming in FBI interviews that he had never been seriously injured on the job

before his allegations against Defendant.  (*Id.* at 12.)  Defendant contends this

information is relevant to demonstrate Lieutenant Wilcox's credibility (or lack thereof)

regarding whether he was previously injured on the job, and that if prior claims were

denied, it can show bias on the part of Lieutenant Wilcox.  (*Id.*)

In response, the Government states that it has provided the worker's

compensation documentation that Lieutenant Wilcox filed because of the injuries he

suffered when Defendant attacked him.  (ECF No. 141 at 9.)  Regarding Defendant's

requests for all of Lieutenant Wilcox's workers compensation claims before August

2018, the Government sates that the request is "nothing more than a fishing expedition

that is wholly immaterial to the case at bar."  (*Id.*)  Specifically, the Government

contends that "whether or not Lt. Wilcox had been injured before by an inmate while he

worked at BOP is not relevant, and Lt. Wilcox stating he had not been injured before

does not in any way make the issue relevant."  (*Id.*)

Based on the Government's response, it appears that there are no discovery

disputes that continue to underlie the portion of the Motion requesting workers'

compensation documents related to the August 17, 2018 incident.  Accordingly, this

portion of the Motion is denied as moot.

With respect to Defendant's request for all of Lieutenant Wilcox's other workers

compensation claims before the incident, the Court agrees that this request is overly

broad.  To the extent Defendant wishes to demonstrate any of Lieutenant Wilcox's

potential bias, he is free to cross-examine Lieutenant Wilcox in this regard, within the

bounds of relevancy, at trial.  Accordingly, this portion of the Motion is denied.

**F.     Lt. Wilcox's disciplinary and personnel history/file, any and all documents, writings, memoranda, data, notes, previous complaints, reports, correspondence, or the like, which pertain to past performance, employment reviews, evaluations, and conduct of Lt. Wilcox in connection with the performance of his duties as a corrections officer and/or employee of BOP**

Defendant essentially requests Lieutenant Wilcox's entire personnel file,

generally arguing that he has an "exculpatory interest" in Lieutenant Wilcox's personnel

and disciplinary history while employed by BOP.  (ECF No. 105 at 13–14.)  Specifically,

Defendant asserts that because Lieutenant Wilcox and Defendant are the only material

fact witnesses, Lieutenant Wilcox's "credibility, motives, and biases are directly at issue

and necessary for the defense to prepare for cross examination."  (*Id.* at 13.)

In response, the Government states that it will comply with its obligation to

disclose any information that has potential exculpatory or impeachment value or value

under *Giglio* and *Brady* but notes that its obligations do not entitle Defendant to "blanket

disclosure of all information in Lt. Wilcox's personnel file."  (ECF No. 141 at 10.)  The

Government reiterates that it "is cognizant of its ongoing obligations and will review

material consistent with *Giglio* and *Brady* mandates and provide the relevant

documents."  (*Id.*)

The Court relies on the Government's representation that it is complying with its

discovery obligations under *Giglio* and *Brady*, and therefore denies this portion of the Motion as moot.

**G.     The incident report regarding Lt. Wilcox's involvement in the restraint and use of force against another inmate, Maurice Wilson, on November 2, 2013, at USP Florence, in addition to any other reports in the last 5 years where Lt. Wilcox was involved in a documented use of force situation**

Defendant requests the incident report regarding Lieutenant Wilcox's involvement in a use of force incident with another inmate, Maurice Wilson, on November 2, 2013 at USP Florence, in addition to other use of force situations involving Lieutenant Wilcox in the last five years.  (ECF No. 105 at 14.)  Defendant argues that Lieutenant Wilcox has placed his previous use of force, specifically striking inmates, at issue by claiming in an FBI interview that he has never struck an inmate during his career.  (*Id.*)  Thus, Defendant contends that Lieutenant Wilcox's credibility regarding his previous use of force is highly relevant to appropriate cross-examination.  Defendant also asserts that "previous incidents could establish 404(b) evidence: a pattern of assaultive behavior by Lt. Wilcox against inmates."  (*Id.*)

In response, the Government states that it has "provided the incident report that BOP was able to obtain from its records regarding the use of force used to extract inmate Wilson from his cell 8 years [ago]."  (ECF No. 141 at 10.)  However, the Government disputes that the report is relevant or required to be disclosed.  (*Id.*)  With respect to the additional request of five years' worth of use of force reports for Lieutenant Wilcox, the Government contends that Defendant has failed to meet his burden to show that such evidence is material to his defense such that the Government must produce it.  (*Id.* at 11.)  Additionally, the Government argues the request is overbroad.  (*Id.*)  Finally, the Government points out that Defendant's argument that

such use of force reports might establish Rule 404(b) evidence "misapprehends that prohibitions in 404(b) which specifically precludes use of prior incidents to prove a person's character to show the actor acted in conformity with that character in the instant offense."  (*Id.* at 11–12.)

To the extent the Government has provided the use of force report concerning Lieutenant Wilcox's involvement with Wilson, Defendant's request is moot.  Regarding Defendant's request for all other use of force reports involving Lieutenant Wilcox for the past five years, the Court relies on the fact that the Government is aware of the scope of its obligations under *Giglio* and that it is complying in good faith with those obligations. And to the extent Defendant requests the evidence not as impeachment evidence but as Rule 404(b) evidence, the Court agrees with the Government that defense counsel does not understand the interplay between propensity evidence and Rule 404(b).  Were counsel to carefully read the rule it should be apparent to her that evidence of Wilcox's alleged prior incidents of force to show a pattern of assaultive behavior, standing alone, is barred by Rule 404(b).  Thus, the Court denies Defendant's request for five years' worth of use of force reports involving Lieutenant Wilcox.

## H.    Any written communication, notes, or memorandum from Lt. Cordova to Lt. Wilcox regarding the Estrada assault incident and/or investigation of Defendant's email pertaining to said alleged assault

Defendant states that "Allegedly, Lt. Wilcox was told by Lt. Cordova to investigate Mr. King to determine if Mr. King was 'threatening staff and/or posed a threat to staff' after Mr. King sent an 'inflammatory' email regarding an incident wherein Lt. Estrada was allegedly assaulted by an inmate earlier that day."  (ECF No. 105 at 15.) Accordingly, Defendant requests communications between Lieutenants Wilcox and Cordova because they are "highly relevant to Mr. King's trial preparation for cross-

examination of bias and motive." (*Id.*)

In response, the Government states that "All communications were previously provided to King about any communications Wilcox had about the inmate assault on Lt. Estrada the morning of August 17, 2018." (ECF No. 141 at 2.)

Based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion. Accordingly, this portion of the Motion is denied as moot.

**I.      The incident report or any/all documentation regarding Lt. Estrada's assault on August 17, 2018, that contains the details of the assault, where and when it happened, who was involved in the incident, the author of the incident report and the date and time said report was written**

Defendant requests all documentation regarding Lieutenant Estrada's assault on August 17, 2018. (ECF No. 105 at 16.) He argues that it is relevant to whether Lieutenant Kammrad was truly working on the incident report related to Lieutenant Estrada's assault while Lieutenant Wilcox was allegedly threatening and assaulting Defendant, and thus was not present to witness what actually occurred between Lieutenant Wilcox and Defendant that day. (ECF No. 105 at 16.)

In response, the Government states that none of the BOP reports contain a time stamp to show when the report were prepared, and "certainly not the times the reports were in process." (ECF No. 141 at 12.) Further, the Government contends that the reports "about the unrelated assault are immaterial, irrelevant and do not contain the information that King is seeking." (*Id.*)

To the extent Defendant requests the report because it will show when Lieutenant Kammrad was working on the report, such that he was not present to witness the interaction between Lieutenant Wilcox and Defendant, the Court takes the

Government at its word that the report does not reveal the time-related information Defendant seeks.  Otherwise, Defendant does not explain how the report regarding Lieutenant Estrada's assault is relevant to his case.  Therefore, based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion.  Accordingly, this portion of the Motion is denied as moot.

**J.**      **Disciplinary Hearing Documents and Audio/Visual Recordings**

Defendant states that the Government previously indicated to defense counsel that it will introduce evidence of prior disciplinary citations and sanctions under Rule 404(b).  (ECF No. 105 at 16.)  Thus, in the Motion, Defendant requests that the Court compel the Government to disclose what evidence it seeks to introduce in this respect. (*Id.*)

In response, the Government states that it "has informed the defendant of the FRE 404(b) it intends to offer at trial and produced the necessary documentation relevant to that evidence."  (ECF No. 141 at 12.)  Additionally, the Government states that if it "intends to use any other documentation in cross examination should the defendant elect to take the stand and testify on his own behalf, the government will comply with any discovery obligation it may have to disclose those documents as they are pulled in preparation for Defendant's possible testimony."  (*Id.*)

Based on the Government's response, it appears that there are no discovery disputes that continue to underlie this portion of the Motion.  Accordingly, this portion of the Motion is denied as moot.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Require Certain Documents

(ECF No. 105) is DENIED in part and DENIED AS MOOT in part, as set forth above.


Dated this 28th day of September, 2021.

BY THE COURT:

William J. Martinez
United States District Judge