IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 19-cr-257-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC KING,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR DESTRUCTION OF EVIDENCE**

---

    The Government charges Defendant Eric King with one count of assaulting or obstructing a federal official in violation of 18 U.S.C. § 111(a)(1), (b). (ECF No. 1.)

    Before the Court is Defendant's Motion to Dismiss for Destruction of Evidence ("Motion to Dismiss"), filed September 13, 2021. (ECF No. 104.) The Government responded on September 24, 2021. (ECF No. 137.)

    For the reasons set forth herein, the Motion to Dismiss is denied.

## I. BACKGROUND

    The Court has recited the central background facts of this case in prior Orders (*see* ECF No. 145), and presumes the parties' familiarity with the facts and procedural history of this case. Thus, the Court only recites facts pertinent to the resolution of this Motion to Dismiss.

    According to Defendant, after the alleged incident with Lieutenant Wilcox, multiple officers responded and restrained Defendant before removing him from the

room.  (ECF No. 104 at 2.)  According to Defendant, discovery shows that officers reported to the FBI that he "continued to be aggressive and additional use of force was used to restrain him on the ground and put him into a restraint chair before carrying him to the Special Housing Unit ("SHU")."  (*Id.* at 2 (citing numerous exhibits).)  Defendant states that upon his arrival at the SHU, "officers determined that further restraint was needed and 'due to his disruptive behavior inmate King was transitioned from the restraint chair to four-points [restraints] at 2:10PM where he will remain until a pattern of self-control can be established.'"  (*Id.* at 3.)  In a Two-Hour Lieutenant Restraints Check Form (24-Hours), Lieutenant Kammrad noted that Defendant was placed in hard four-point restraints due to assaultive behavior, that the restraints had not had a desired calming effect, and that Defendant would remain in restraints until self-control could be established.  (*Id.* (citing ECF No. 104-5 at 1).)

On September 20, 2018, Defendant's former attorney, Amanda Schemkes, sent a preservation request letter to members of the Federal Bureau of Prisons ("BOP"), including James P. Wiencek, a Special Assistant United States Attorney for BOP - ADX Florence, requesting retention of all hard copy documents and electronically stored information related to Defendant's transfers from FCI Florence to USP Florence to USP Leavenworth in August 2018.  (ECF No. 104-6 at 1.)  Defendant states that in response to a discovery request for all video depicting his restraint and forcible movement from outside of the lieutenant's office to four-point restraints in the SHU, the Assistant United States Attorney represented that "no such video was available."  (ECF No. 104 at 4.)  The Government provided Defendant documentation from an interview conducted on May 7, 2020 with FCI Florence Special Investigative Services ("SIS") Lieutenant Robert

2

Cordova, who is responsible for investigating incidents that occur within the institution involving inmates and staff. (ECF No. 104-7.) Defendant states that "Lieutenant Robert Cordova explained that SIS did not save the video from the SHU cameras that would have shown Mr. King being moved to the holding cell, and that such video was not saved because Mr. King was being compliant at the time." (ECF No. 104 at 4 (citing ECF No. 104-7).)

## II. LEGAL STANDARD

Two Supreme Court cases, *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), set forth the standards used to determine whether the Government violated a defendant's right to due process through the destruction of evidence. The Government violates a defendant's due process when it fails to preserve or destroys evidence with "an exculpatory value that was apparent before it was destroyed" and "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. In *Trombetta*, the Supreme Court noted that, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488.

In *Youngblood*, the Supreme Court clarified that the Due Process Clause does not "impos[e] on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. Instead, if the item is of indeterminate evidentiary value or only potentially useful—*i.e.*, "evidentiary material of which no more

3

can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant"—there is no due process violation unless the defendant proves the state acted in bad faith by destroying or failing to preserve the evidence.  *Id.* at 57–58.

Under *Youngblood*, a defendant must demonstrate: (a) that the evidence destroyed or lost was potentially exculpatory, and (b) that the Government acted in bad faith when disposing of the evidence.  *See United States v. Bohl*, 25 F.3d 904, 910–11 (10th Cir. 1994).  To determine whether the Government acted in bad faith, the Tenth Circuit considers whether: (1) the Government had knowledge or notice of the exculpatory value of the evidence at the time it was lost or destroyed; (2) a defendant's assertion of potentially exculpatory value is "not merely conclusory, but instead . . . backed up with objective, independent evidence giving the [G]overment reason to believe that further tests . . . might lead to exculpatory evidence"; (3) the Government had possession of the evidence when it received notice about the potential exculpatory value; (4) the evidence is central to the Government's case; (5) the Government has offered an innocent explanation for its failure to preserve the evidence; and (6) "the destruction of the evidence was in accordance with standard procedure and the evidence was adequately documented prior to its destruction."  *Id.* at 911–12; *United States v. Smith*, 534 F.3d 1211, 1225 (10th Cir. 2008); *United States v. Ward*, 182 F. App'x 779, 785 (10th Cir. 2006).

### III. ANALYSIS

Defendant argues that the Government violated his right to due process by destroying exculpatory evidence, and thus asks the Court to dismiss the Indictment.

4

(ECF No. 104.)  Defendant argues that the video from the SHU demonstrating his compliance was valuable and necessary exculpatory or impeachment evidence for his complete defense and cannot be duplicated as a method of impeaching multiple law enforcement officers.  (*Id.* at 5.)  Defendant posits what the video shows: if he is "fighting, resisting or otherwise out of control on the video, a jury may infer he was aggressive and may have instigated violence against Wilcox in the closet;" however, "if [he] is complaint [*sic*] and not resisting in the immediate aftermath, a jury may infer that he merely defended himself in response to an assault by staff."  (*Id.* at 7–8.)

Additionally, Defendant contends that the BOP was aware of the video's exculpatory character and destroyed it in bad faith and against BOP policy after his attorney requested that such evidence be preserved.  (*Id.* at 5.)  According to Defendant, "it is clear that FCI Florence officers believed that the video demonstrated [Defendant's] compliance in the middle of what various officers characterize as ongoing aggression and resisting by [Defendant]."  (*Id.* at 10.)  While Defendant does not know when the video was destroyed, he argues that it is clear that his attorney requested that the BOP retain all relevant video evidence, and that it is also clear that BOP policy "anticipates that this evidence will be retained for at least 2 years."  (*Id.* (citing 28 C.F.R. 552.27, Prog Stat P5566.06 14(b)).)

*Trombetta* and *Youngblood* provide the Court with two avenues of analysis—one used when the evidence lost was exculpatory and another used when the evidence was potentially useful.  (*See supra*, Part II.)  Thus, the Court first must determine if the video possessed "exculpatory value that was apparent before" it was destroyed.  *See Trombetta*, 467 U.S. at 489.

The Court concludes that the video's exculpatory value was not "apparent" before it was deleted.[1]  According to Defendant, the critical importance of the video evidence was made clear to the Government by the timely notice of preservation of evidence that was sent by Defendant's attorney.  (ECF No. 104 at 7.)  Additionally, Defendant states that because Lieutenant Cordova acknowledged that the video depicted Defendant acting compliantly, it must have been apparent that it was exculpatory.  (*Id.*)

As an initial matter, the BOP's default retention policy for video recordings of "uneventful content" is to delete it ten days after the date of the recording.[2]  (ECF No. 137 at 5; ECF No. 137-1 at 2.)  As the Government explains, because Lieutenant Cordova concluded that the video need not be preserved, he would have had no reason to preserve it for 33 days until BOP received Defendant's attorney's preservation request on September 20, 2018.  (*Id.*)

Further, Defendant has adduced no evidence that the value of video footage showing BOP officers moving him to the holding cell—while he was allegedly acting in a compliant manner—would have been apparent to law enforcement before it was destroyed.  This is particularly true given the fact that BOP preserved several hours of video evidence from August 17, 2018, including video depicting Defendant lying in restraints on the bed and being transported from the location where the assault took

---

[1] Given this finding, the Court need not address whether Defendant can meet the second prong of the test: whether he could obtain comparable evidence by other reasonably available means.  *See Trombetta*, 467 U.S. at 489.

[2] According to the BOP's video retention policy, "video recordings of uneventful content require a limited retention time interval," while "video content already established as relevant or applicable to an event category or case is preserved under a separate record keeping authority."  (ECF No. 137-1 at 2.)  Video recordings "not deemed to contain a case related or category-related event" may be deleted "10 days after the date of the recording."  (*Id.*)

place to the SHU.

And, as a practical matter, Defendant's actions after the alleged assault have arguably little to no bearing on the matter at hand: whether he in fact assaulted Lieutenant Wilcox.  Defendant proposes that the destroyed video might have shown that he was "complaint [*sic*] and not resisting in the immediate aftermath" such that "a jury may infer that he merely defended himself in response to an assault by staff."  (ECF No. 104 at 7.)  Such a use of the video evidence would be barred by Rule 404(b).  The Government correctly points out that "even if the evidence were relevant, it would not be admissible at trial to show that [D]efendant did not assault the officer because '[e]vidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'"  (ECF No. 137 at 3–4 (citing Fed. R. Evid. 404(b)(1)).)

Alternatively, Defendant argues the video evidence would be potentially useful to his defense and that the Government acted in bad faith in destroying it.  (ECF No. 104 at 8–10.)  *See United States v. Wiggins*, 2018 WL 4208066, at *4 (D.N.M. Sept. 4, 2018) ("The defendant must meet [a] higher standard of proof . . . when the evidence is only potentially useful." (quotation marks and citation omitted)).  Even assuming for the sole purpose of ruling on the Motion to Dismiss that the video was potentially useful, the Court concludes that Defendant has not met his burden to show that it was destroyed in bad faith.  *See United States v. Richard*, 969 F.2d 849, 853–54 (10th Cir. 1992) ("The mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith." (citation omitted)).

First, as noted above, Defendant has not shown that the Government was on

notice that Defendant believed the evidence was potentially exculpatory until after it was destroyed.  Second, Defendant's assertion that the video is exculpatory is not supported by objective, independent evidence.  Even Defendant states in his Motion to Dismiss that such a conclusion would be an inference the jury would have to separately make.  (ECF No. 104 at 7–8.)  Third, the Government apparently did not possess or control the video when it received notice from Schemkes to preserve all evidence.[3]  Fourth, there is no assertion by the Government, or any objective independent reason to conclude, that the destroyed evidence was central to the Government's case.  Fifth, the Government has offered a reasonable and innocent explanation for its failure to preserve the video—namely, "[Cordova and SIS] did not think to save the video of [Defendant] being moved from the door of the SHU to the holding cell because [Defendant] was being complaint [*sic*] at that time."  (ECF No. 104-7 at 2; ECF No. 137 at 4.)  Finally, the Government has explained that Lieutenant Cordova destroyed the evidence pursuant to previously adopted BOP policy.  (ECF No. 137 at 5.)

At bottom, Defendant has failed to show the exculpatory value of the video was apparent to the Government before it was destroyed.  Similarly, even assuming he has shown the video was potentially useful to him, he has not demonstrated that the Government acted in bad faith.  Because Defendant has failed to show a violation of his due process rights, the Court must therefore deny his Motion to Dismiss.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Destruction of Evidence (ECF No. 104) is DENIED.

---

[3] It is unclear precisely when the video was destroyed.

Dated this 30th day of September, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge