**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 19-cr-257-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ERIC KING,

      Defendant.

---

**ORDER DENYING DEFENDANT'S AMENDED MOTION TO DISMISS**
**FOR OUTRAGEOUS GOVERNMENT MISCONDUCT**

---

The Government charges Defendant Eric King with one count of assaulting or obstructing a federal official in violation of 18 U.S.C. § 111(a)(1), (b).  (ECF No. 1.)

Before the Court is Defendant's Amended Motion to Dismiss for Outrageous Government Misconduct ("Motion to Dismiss"), filed September 16, 2021.  (ECF No. 113.)  The Government responded on September 23, 2021.  (ECF No. 124.)

The Court has recited the central background facts of this case in prior Orders (*see* ECF No. 145), and presumes the parties' familiarity with the facts and procedural history of this case.  For the reasons set forth herein, the Motion to Dismiss is denied.

**I. LEGAL STANDARD**

"When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct because [doing so] would offend the Due Process Clause of the Fifth Amendment."  *United States v. Wagner*, 951 F.3d 1232, 1253 (10th Cir. 2020)

(citing *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994) (quotations

omitted)).  To prove outrageous government conduct, the defendant must show "either

(1) excessive government involvement in the creation of the crime, or (2) significant

governmental coercion to induce the crime."  *United States v. Dyke*, 718 F.3d 1282,

1288 (10th Cir. 2013) (quotations omitted).  Under "the totality of the circumstances[,] . .

. the government's conduct [must be] so shocking, outrageous and intolerable that it

offends the universal sense of justice."  *United States v. Perrine*, 518 F.3d 1196, 1207

(10th Cir. 2008) (quotations omitted).

## II. ANALYSIS

In his Motion to Dismiss, Defendant argues that government officials at FCI

Florence engaged in a "course of egregious, conscience-shocking misconduct" during

their four days of interaction with and investigation of him.  (ECF No. 113 at 1.)

Specifically, Defendant contends that this conduct includes: (a) the purported interview

of Defendant in an off-camera storage closet, (b) the brutally prolonged and

inappropriate use of physical restraints, (c) falsification of evidence or lies to the FBI,

and (d) interference with Defendant's right to counsel.  (*Id.*)  Given this conduct,

Defendant argues that his due process rights and legal right to be free from excessive

force and cruel and unusual punishment were violated, necessitating dismissal of the

Indictment.  (*Id.* at 15.)

The Government responds that Defendant has not alleged any outrageous

governmental conduct that falls within the Tenth Circuit's legal standard for evaluating

such conduct, and even assuming it did, the alleged conduct is not outrageous such

that it warrants dismissal of the Indictment.  (ECF No. 124.)

**A.      Legal Framework for Dismissing an Indictment for Outrageous Conduct**

In his Motion to Dismiss, Defendant acknowledges that the test described above is "plainly inapplicable to cases alleging outrageous governmental conduct outside the context of an entrapment/excessive governmental involvement defense."  (ECF No. 113 at 6.)  In other words, Defendant apparently asks the Court to bypass the requirement that he show excessive governmental involvement in the creation of the crime or governmental coercion to induce the crime.  Instead, Defendant directs the Court's attention to *Rochin v. California*, 342 U.S. 165 (1952) as a "starting point for analysis here."  (*Id.*)  In *Rochin*, the Supreme Court affirmed the dismissal of an indictment where government agents broke down the defendant's bedroom door, attempted to forcibly remove pills from his throat, took him to a hospital, and had his stomach pumped against his will.  *Rochin*, 342 U.S. at 166.  The Supreme Court held that the government's use of capsules removed from the defendant's stomach to obtain a conviction for drug possession violated substantive due process principles of "fairness" and "decency."  *Id.* at 169.

Defendant fails to cite any recent Tenth Circuit case law adopting the particular approach he recommends.  Instead, he points the Court toward various Supreme Court cases which stand for the general proposition that due process prohibits government conduct that "shocks the conscience."  (ECF No. 113 at 6–7.)[1]

---

[1] For support, Defendant relies on: *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (reaffirming *Rochin*'s prohibition on conduct "that shocks the conscience" and violates the "decencies of civilized conduct"); *United States v. Spivey*, 508 F.2d 146, 149–50 (10th Cir. 1975) (noting, albeit in an entrapment-related context, that "the more immediate the impact of the government's conduct upon the particular defendant, the more vigorously would be applied" a test for impropriety under a theory of outrageous governmental conduct); *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (noting the importance of analyzing the extent to which governmental conduct is "brutal" and "offensive" in assessing due process claims under *Rochin*).

In response, the Government states that "there is no legal basis for dismissing an indictment based on alleged 'outrageous conduct' that occurs during the investigation of a crime that has already been committed."  (ECF No. 124 at 3 (citing *United States v. Leon*, 2018 WL 4339374, at *6 (N.D. Ill. Sept. 11, 2018)).)  The Government underscores that all of the allegedly outrageous conduct had nothing to do with governmental engineering or coercion of criminal activity and, importantly, occurred after the assault and before his indictment.  (*Id*. at 4–5.)  Rather, the allegations of outrageous conduct here relate to evidentiary issues, matters that might be raised on cross examination of Government witnesses, or concerns regarding how Defendant was treated after the assault.  (*Id.*)

As the Government emphasizes, Defendant's allegations of governmental outrageous conduct lack any connection to governmental engineering or coercion of criminal activity.  The only allegation that could even possibly fall within this category is that Lieutenant Wilcox brought Defendant into a closet to interview him without any recording of the meeting—and this construction of events would be a stretch under the framework for analyzing whether outrageous government conduct occurred.  As such, the Court is highly skeptical that Defendant can bring a motion to dismiss an indictment under these circumstances.  However, given that the Government has not provided binding authority *definitively* stating that the Court cannot evaluate the alleged conduct under the broader framework advocated by Defendant, in an abundance of caution, the Court proceeds to do so.

## B.    Defendant's Allegations Do Not Constitute Outrageous Conduct

The Court addresses each of Defendant's allegations regarding allegedly outrageous government conduct in turn.

4

1.   <u>The interview in an off-camera room</u>

Defendant asserts that Lieutenant Wilcox "bizarrely and inexplicably" took him alone to the storage room at the end of the lieutenants' hallway "in order to be obscured from view[,] raising a clear specter of intended misconduct and official impropriety." (ECF No. 113 at 8.)  Defendant characterizes the storage room as accessible only to staff, containing unsecured items, and lacking cameras.  (*Id.*)  Additionally, Defendant observes that there are no cameras filming the entrance to or interior of the storage room, nor did Lieutenant Wilcox attempt to obtain recordings of the interview or document the interaction with pen and paper.  (*Id.*)

Defendant cites no case law supporting his argument that interviewing an inmate in a storage room[2] and not recording the encounter violates the inmate's constitutional rights.  (*See* ECF No. 113.)  Regardless, the Court finds that such conduct does not offend the "universal sense of justice."  *Perrine*, 518 F.3d at 1207.

2.   <u>The use of restraints</u>

Defendant refers to Federal Bureau of Prisons ("BOP") officials' use of four-point restraints on him following the alleged assault as a "restraint torture sequence."  (ECF No. 113 at 10.)  This incident involved Defendant being placed in hard four-point restraints for over five hours, then being placed in soft restraints, not being allowed to use the toilet when he was in hard point restraints, which resulted in him urinating on himself, and only receiving food following his release from hard restraints.  (*Id.*)  Further, Defendant argues that the force and physical restraints officials used was cruel and unusual punishment in violation of the Eighth Amendment and BOP policy.  (*Id.* at 11.)

---

[2] The Government argues that the evidence actually shows that Lieutenant Wilcox took Defendant to a vacant office within the bank of lieutenants' offices.  (ECF No. 124 at 7.)

Defendant cites no case law supporting his argument that the BOP's use of restraints on him, following an alleged assault of a corrections officer, violates the Eighth Amendment or constitutes outrageous conduct warranting dismissal of the Indictment. (*See generally* ECF No. 113.)

In its response, the Government points out that a grand jury found probable cause to believe that Defendant assaulted Lieutenant Wilcox on August 17, 2018, causing physical injury.  (ECF No. 1; ECF No. 124 at 7.)  Under these circumstances, the Government asserts, and the Court agrees, that it is "not hard to understand why Defendant was held in restraints for several hours after the assault."  (ECF No. 124 at 7.)  Given Defendant's failure to cite factually similar cases supporting his request for dismissal,[3] the Court again finds that such conduct does not offend the "universal sense of justice."  *Perrine*, 518 F.3d at 1207.[4]

### 3.    Destruction and falsification of evidence

Defendant contends that the BOP destroyed exculpatory video evidence, lost the original document memorializing his waiver of his *Miranda* rights signed on August 20, 2018, failed to create or preserve evidence of use of force and restraint, and either

---

[3] Defendant cites *Whitley v. Albers*, 475 U.S. 312, 320–21, 327 (1986), noting that in that case "force punitively applied for the purpose of causing harm is cruel and unusual punishment." (ECF No. 113 at 9.)  However, Defendant has not adduced evidence demonstrating that the restraints were used punitively, and *Whitley* does not address dismissal of an indictment for outrageous government conduct.  Defendant's citation to *Rochin* is no more meritorious, as law enforcement's conduct in that case (described above) is distinguishable from BOP's restraint of Defendant in this case. Thus, the Court finds Defendant's reliance on *Whitley* and *Rochin* unavailing.

[4] In his Motion to Dismiss, Defendant discusses at length BOP policies regarding physical restraints and how the BOP allegedly violated such policies.  (ECF No. 113 at 9–10.) However, violations of BOP regulations, without more, do not constitute a constitutional violation, and therefore, the Court will not address this portion of Defendant's argument.  *See, e.g.*, *Flanagan v. Shively*, 783 F. Supp. 922, 931 (M.D. Pa. 1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.").

falsified evidence or lied to the FBI.  (ECF No. 113 at 4.)  Specifically, Defendant

asserts that at least two hours of video depicting him in hard four-point restraints is

unaccounted for.  (*Id.* at 5.)  Additionally, Defendant states that two FCI Florence

officials represented to the FBI that they did not have contact or interaction with him on

August 17, 2018, but material provided in discovery shows that both individuals

documented their interactions with Defendant while he was held in restraints in the

SHU.  (*Id.*)  Other than generally citing *California v. Trombetta*, 467 U.S. 479 (1984),[5]

Defendant cites no factually similar case law supporting this portion of his argument.[6]

(*Id.* at 4.)

The Court has already discussed Defendant's arguments related to the

destruction of certain video evidence under *Trombetta* in a previous Order and declines

to reiterate that analysis here.  (*See* ECF No. 149.)  Suffice it to say that Defendant's

arguments regarding alleged destruction or falsification of evidence fare no better in the

instant Motion to Dismiss, albeit under a different analytical framework.

Regarding any alleged missing video evidence, even if a portion of video

---

[5] Defendant cites "*Trombetta v. California* (467 U.S. 479)," which appears to be an incomplete and incorrect citation.

[6] Defendant also cites *United States v. Kennedy*, in which the defendant alleged violations of and intrusions into the attorney-client relationship by the government, to underpin the proposition that government misconduct in collecting incriminating evidence may rise to the level of a due process violation when the misconduct is outrageous enough to shock the conscience of the court.  225 F.3d 1187, 1196 (10th Cir. 2000).  However, this type of misconduct—using allegedly privileged information at trial—is not at issue here.

Similarly, Defendant cites *United States v. Garcia*, in which the defendant argued that he should have received a downward departure in his sentence due to government misconduct. 411 F.3d 1173, 1180 (10th Cir. 2005).  Specifically, Garcia argued that a government agent enticed him into seeking the sexual exploitation of a child and that the agent deliberately structured the operation in such a way as to achieve the highest sentence possible.  *Id.*  These facts are readily distinguishable from those at issue in this case.

evidence showing him in restraints is missing, ample other video evidence depicts Defendant in restraints.  (ECF No. 113-10.)  And Defendant has not explained how additional video of him in restraints is relevant or exculpatory.  As the Government emphasizes, the charges pertain to an assault of a federal officer, not what occurred in FCI Florence or elsewhere thereafter.  (ECF No. 124 at 8.)  And as the Court has explained in other Orders (*see* ECF No. 149 at 7), Federal Rule of Evidence 404(b)(1) bars use of such evidence to show that Defendant's compliant behavior following the assault demonstrates that he behaved calmly with Lieutenant Wilcox during the time the assault occurred.

With respect to alleged "falsification" of documents by Lieutenant Michelle Abraham and Nurse Ronald Batouche, Defendants arguments are similarly without merit.  (ECF No. 113 at 5, 13.)  Defendant states that Lieutenant Abraham and Nurse Batouche told the FBI that they did not interact with Defendant on August 17, 2018.  (*Id.* at 13.)  However, both Lieutenant Abraham and Nurse Batouche completed paperwork showing that they were involved with monitoring Defendant during the time he was in four-point restraints in the SHU at FCI Florence.  (ECF Nos. 113-10, 113-18, 113-19, and 113-20.)  Despite these discrepancies, the Court concludes that while these individuals' attention to detail during FBI interviews could have been more careful, their actions do not arise to the level of outrageous government conduct.  As the Government suggests, Lieutenant Abraham could have forgotten that she was involved in checking on Defendant while he was in restraints, and Nurse Batouche could have forgotten he examined Defendant.  (ECF No. 124 at 9.)  Regardless, Defendant could cross examine these individuals at trial on these issues if he so chose.

The loss of the original version of Defendant's *Miranda* waiver is of negligible concern, as the Government has provided a copy of that waiver.  (ECF No. 124-6.) While Defendant states that he "purportedly executed" the copy and complains about the loss of the original, he does not appear to seriously dispute the copy's authenticity. (ECF No. 113 at 13.)

Given the foregoing, Defendant's allegations of destruction and falsification of evidence do not rise to the level of outrageous government conduct.

4.     Interference with Defendant's attorney-client relationship

Defendant contends that the Government obstructed his relationship with his attorney in a "manner that interfered with his ability to exercise his right to counsel prior to, and during interrogation."[7]  (ECF No. 113 at 14.)  Specifically, he argues that the Government obstructed his counsel's ability to communicate with Defendant while concealing this fact from him.  (*Id.*)  He states that the Government was aware of his attorney-client relationship with Amenda Schemkes, and on August 19, 2018, Schemkes e-mailed BOP officials requesting information regarding Defendant.  (*Id.*)  On August 20, 2018, Special Assistant United States Attorney Wiencek responded that Defendant would need to complete authorization paperwork before Wiencek would talk to Schemkes.  (*Id.*)  Schemkes requested a legal call with Defendant as soon as

---

[7] Defendant cites the Tenth Circuit standard for examining the outrageousness of government intrusion into the attorney-client relationship via the use of the attorney as an informant.  *See United States v. Thompson*, 518 F.3d 832 (10th Cir. 2008) (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). The *Voigt* factors are: (1) government's objective awareness of an ongoing attorney-client relationship, (2) deliberate intrusion into that relationship, and (3) actual and substantial prejudice.  *Id.*

Defendant states that he "does not allege government intrusion upon the content of his communications with counsel."  (ECF No. 113 at 14.)  Thus, to the extent Defendant argues the *Voigt* test applies, he has conceded he cannot satisfy it.

possible, and Wiencek stated that the request had been passed along to Defendant's unit team. (*Id.* at 15.) Ultimately, Defendant argues that Wiencek's actions "deliberately intruded with and obstructed" his access to counsel, and that he was "further prejudiced by these acts because the government was able to obtain admissions from him in spite of asking SIS Detectives Erb and Silva about the possibility of speaking to an attorney." (*Id.*) Defendant cites no cases supporting the proposition that such conduct warrants dismissal of the Indictment. (*See* ECF No. 113.)

The evidence Defendant identifies perhaps demonstrates a slight delay in his ability to speak with counsel, but he cites no cases demonstrating that such a delay rises to the level of outrageous government conduct warranting dismissal of the Indictment, and in any event, the Court does not find the series of events he describes to be "conscience-shocking." Wiencek responded to Schemkes within 24 hours and forwarded her request to speak with Defendant to Defendant's unit team. (ECF No. 113-21.) There is no allegation that the Government completely ignored Schemkes, deliberately delayed coordinating her contact with Defendant, or intruded into attorney-client communications. The Court finds that these facts simply do not constitute outrageous conduct.

Even taken together under a "totality of the circumstances analysis," Defendant's allegations fall well short of what is required to warrant dismissal of the Indictment. Therefore, the Court will deny Defendant's Motion to Dismiss.

### III. CONCLUSION

For the reasons stated above, Defendant's Amended Motion to Dismiss for Outrageous Government Misconduct (ECF No. 113) is DENIED.

Dated this 1st day of October, 2021.

BY THE COURT:

William J. Martinez
United States District Judge