**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Criminal Case No. 1:19-cr-257-WJM

UNITED STATES OF AMERICA,

    Plaintiff

v.

Eric King,

    Defendant

---

### DEFENDANT'S MOTION TO OPEN COURT PROCEEDINGS TO THE PUBLIC

---

    Defendant Eric King, by and through counsel, and pursuant to the First and Fifth Amendments moves this Court to open the evidentiary suppression hearing scheduled to occur on October 14, 2021, 9:30 a.m, pursuant to the Fifth Amendment's guarantee of Due Process. Counsel has conferred with Assistant US Attorney Teitelbaum who indicates that he will defer to the Court regarding this request to allow the public into the courtroom during the suppression hearing. As grounds for this motion, Mr. King states the following:

### I.    FACTUAL BACKGROUND.

    Mr. King stands before this Court accused of one count of Assaulting or Obstructing a Federal Official in violation of 18 U.S.C §111. The indictment in this case stems from an August 17, 2018 encounter in a prison storage room between Mr. King and FCI Florence Administrative Lieutenant Wilcox.

On September 16, 2021, the defense filed an Amended Motion to Suppress various statements made by Mr. King in response to custodial interrogation. Docket No. 114. The government filed a response on September 24, 2021 (Docket No. 120), and the Defendant was permitted a Reply filed on September 27, 2021. Docket No. 143. On September 29, 2021, the Court found that there were disputed material facts relating to whether the statements were voluntarily made by Mr. King, and these disputes require the Court to make factual findings in order to resolve the Motion. Docket No. 148. The Court set the hearing to take place on Thursday, October 14, 2021, at 9:30AM.

On the afternoon of October 13, 2021, the Court issued a closure order regarding courtroom proceedings on October 14. The order indicated that, "The Court has become aware of information which causes it to be concerned of a potential public disruption of the hearing on Defendant Eric King's Amended Motion to Suppress," and that "[t]his information also causes the Court to be concerned for the safety of Court staff." As a result of the non-specific but concerning information, the Court ordered that Courtroom A801 be entirely closed to the public for the hearing and further ordered that the public will have access to the hearing only by way of the public access telephone line which solely permits audio. Docket No. 152.

Mr. King has been subject to onerous conditions of confinement pretrial that interfere with his ability to communicate even with his family and counsel. He has been on general mail restrictions since May of 2020 and has been unable to communicate in writing with persons other than his wife, mother, and legal team since that time. Mr. King has not been able to use the telephone to call anyone other than his wife, mother, and

legal team members throughout the entirety of his time pre-trial at FCI Englewood. See Docket No. 40. Throughout the calendar years 2020 and 2021, Mr. King has not had visits from anyone other than his wife and legal team members.

There is no factual basis that the defense is aware of that any member of the public interested in watching the hearing in support of Mr. King will conduct themselves in an inappropriate manner. The one public facing post that the defense is aware of reminds people to dress for court and bring your I.D. See Ex. A (social media post). In the event that the Court determined that someone was not conforming to the court rules of decorum, the adequate remedy is to exclude that individual—not to preemptively exclude everyone including the press and defendant's family.

## II.    ARGUMENT

The United States Constitution guarantees a criminal defendant the right to a public trial. U.S. Const. amends VI, XIV. The requirement of a public trial "is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia,* 467 U.S. 39, at 46 (1984)(quotations omitted); *accord Estes v. Texas,* 381 U.S. 532, 588, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring) ("Essentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings").

The Sixth Amendment guarantees every criminal defendant a "speedy and public trial." U.S. Const.Amend. VI. "Although the right to an open trial is not absolute, that right will only rarely give way to other interests." *Davis v. Reynolds, 890* F.2d 1105, 1109 (10th Cir.1989) (citing *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)); *United States v. Galloway*, 937 F.2d 542, 545 (10th Cir. 1991); see also *People v. Hassen*, 2015 CO 49, ¶ 8 ("the balancing of interests must be struck with special care"). The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. *Galloway* at 545-46. (citing *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215). *See also Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980) ("Absent an overriding interest, articulated in findings, the trial of a criminal case must be open to the public.")

Colorado recognizes that both partial and total closures have constitutional significance, and that the exclusion of even one person can, in certain circumstances, violate a defendant's right to a public trial. *People v. Jones*, 2020 CO 45, ¶¶ 26-27, 34. Prior to issuing any closure order: (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced;" (2) "the closure must be no broader than necessary to protect that interest;" (3) "the trial court must consider reasonable alternatives to closing the proceeding;" and (4) the "trial court must make findings adequate to support the closure." *People v. Hassen*, ¶ 9 (quoting *Waller*, 467 U.S. at 45).

An unjustified closure may be harmless if the closure was "so trivial as not to violate a defendant's right to a public trial." *Colorado v. Lujan*, 2020 CO 26, ¶ 17. The triviality standard requires another four-factor test, one that looks to "the values furthered by the public trial guarantee:" "1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury." *Jones*, ¶ 38 (internal citations omitted). A court should consider the totality of the circumstances and consider factors such as "the duration of the closure, the substance of the proceedings that occurred during the closure, [and] whether the proceedings were later memorialized in open court or placed on the record…." *Lujan*, ¶ 19.

In *Davis*, as in this case, the public courtroom was closed to all, including press and the defendant's family, without articulating the overriding interest warranting the closure.

> The trial court's order in this case made no exceptions for members of the press or for relatives of the defendant. We are not faced, therefore, with a partial closure or a closure tailored to protect the conflicting interests of the defendant in a public hearing and the government's interest in protecting a susceptible or vulnerable witness. We therefore apply the "overriding interest" standard articulated in *Waller* to the trial court's order.

*Davis v. Reynolds*, 890 F.2d 1105, 1110 (10th Cir. 1989). *Davis* pertained to the prosecutor's concern for juvenile witnesses, unlike the case at bar where the government has not sought the closure of the court hearing, and no overriding interest has been clearly articulated other than a vague concern that the hearing might be disrupted based on "information."

The Court's October 13, 2021 order did not engage in this balancing test or set forth any reasons or findings adequate to support restricting the public from viewing court proceedings. Facilitating the motion hearing through the use of a public access phone line will violate Mr. King's right to a public hearing because it effectively closes the entire hearing to the public at large.

In the event that the Court's concern regarding the potential decorum of a member of the public in attendance at this hearing is warranted, a reasonably tailored remedy that is no broader than necessary to protect the public interest would be to simply have that individual excluded from the courtroom by the U.S. Marshalls. To preemptively close the entire proceeding based upon a sua sponte potential concern regarding vague "information" does not meet the standard required by law. The Court should conduct the fact-finding and subsequent balancing test required by *Waller* and *Davis* and, following this analysis, reconsider and rescind the October 13 order restricting all of the public from entry to the courtroom.

### A. Audio access to the proceedings does not satisfy the Fifth and Sixth Amendment.

Counsel for Mr. King acknowledges that phone access to a motions hearing is not a typical complete physical closure or exclusion from the courtroom. Nevertheless, the nature of the technology itself and the limitations on accessing that technology constrict the values furthered by the Constitution's public hearing guarantee. The use of a phone access line does not allow the public to view the proceedings, is subject to technical problems, limits access to the courtroom to persons with the means to have unobstructed

access to a telephone, and is not a trivial or "narrowly tailored" closure designed to meet specifically enunciated concerns.

The phone does not permit the public to view the court proceedings at all, whereas the entire courtroom would be viewable to an in-person spectator. The public cannot see the faces of everyone participating in the hearing. Nor can the public see their body language, an essential element of human communication. This element of public presence is especially important in this specific suppression hearing for Mr. King, where the defense claims that physical punishment, prolonged punitive restraint, holding Mr. King incommunicado for days prior to interrogation, and false representations regarding non-prosecution of the offense amounted to coercion sufficient to overbear Mr. King's will and render any statements he made involuntary. Prohibiting the public from viewing the proceedings does not keep the prosecution, judge, and jury "keenly alive to their sense of responsibility and the importance of their functions." *Waller*, 467 U.S. at 46; *see also Jones*, ¶ 38.

Video and telephone conferencing technology is always at the mercy of technical problems, e.g., the host's lack of bandwidth or cell reception to support all viewers or listeners, participants' unreliable internet or data connections, or feedback from the interplay of different audio systems. These glitches can easily prevent the memorialization of an accurate record. *Lujan*, ¶ 19. It is particularly challenging to focus on a multi-hour evidentiary hearing while solely listening to a conference call line, and thus many people will either be unable to participate or will terminate their participation in advance of the defense case (which will take place last).

Not everyone has access to a computer or cell phone. Access to technology costs money; walking into a public forum does not. And courthouses are generally easy to find, while the phone number and access code for any one hearing are not widely available, and only available online. This means using a conference call line defines "the public" who can view a hearing as those who can afford it or endure the tedium. *See Jones*, ¶ 34 (excluding even one person from a trial can result in constitutional error). Further, limitations on access to public court hearings increase the probability of abuse in the judicial process. The less people watching and the less accurate the record, the more likely prosecutorial or judicial misconduct, legal errors, and witness perjury will go unnoticed and unchallenged. The right to a public trial exists to limit the damage from these exact harms. *Waller*, 467 U.S. at 46.

Holding a motions hearing, which is technically a part of a criminal trial, via telephone conference call makes these problems all the more harmful. *See Lujan*, ¶ 19 (duration of closure and substance of closed proceedings relevant to finding constitutional error). Even if the court articulates an overriding interest in allowing public access only via telephone and makes factual findings to that effect, the resulting closure would not be trivial.

### III. CONCLUSION

To justify exclusion of the public from the courtroom during a critical stage of a criminal proceeding, (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced"; (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) the "trial court must make findings

adequate to support the closure." *Hassen*, ¶ 9 (quoting *Waller*, 467 U.S. at 45). For these reasons, and any others that may appear to this Court, Mr. Eric King respectfully requests that this Court allow the public to be present at his October 14, 2021 suppression hearing.

Respectfully submitted September 13, 2021,

*/s/ Lauren C. Regan*
Lauren C. Regan, Attorney at Law
The Civil Liberties Defense Center
Oregon State Bar #970878
1430 Willamette St. #359
Eugene, Oregon 97401
541.687.9180
lregan@cldc.org

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all other counsel of record.

*/s/ Lauren C. Regan*
Lauren C. Regan, Attorney at Law
The Civil Liberties Defense Center