IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 19-cr-257-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC KING,

    Defendant.

## ORDER ON MOTIONS *IN LIMINE*

    The Government charges Defendant Eric King with one count of assaulting or obstructing a federal official in violation of 18 U.S.C. § 111(a)(1), (b).  (ECF No. 1.)

    Before the Court are: (1) Government's Motion *in Limine* Regarding Conditions of Confinement ("Government's MIL") (ECF No. 118), to which Defendant filed a response (ECF No. 142); and (2) Defendant's Motion *in Limine* ("Defendant's MIL") (ECF No. 117), to which the Government filed a response (ECF No. 144).

    The Court presumes familiarity with the facts of the case, as well as the Court's prior orders.  For the reasons set forth below, the Government's MIL is granted, and Defendant's MIL is granted in part and denied in part.

### I.  LEGAL STANDARDS

    "The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges

have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

The movant "has the burden of demonstrating that the evidence is inadmissible on any relevant ground," and a court "may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d, 1078, 1082 (D. Kan. 2000)).

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It may, however, be admissible for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Tenth Circuit "instructs courts to consider four factors in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not

substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

## II. ANALYSIS

### A.  Government's MIL

The Government requests that the Court preclude evidence or arguments related to Defendant being placed in a "Stryker" chair, held in four-point restraints, and housed in the Special Housing Unit ("SHU") following the alleged assault. (ECF No. 118 at 1.) Because this case concerns whether Defendant assaulted a federal officer and is not a civil case challenging conditions of confinement or impact litigation, the Government argues that evidence on these topics is irrelevant under Rule 402. Additionally, even if the Court determines the issues are relevant, the Government asserts that the evidence should nonetheless be precluded under Rule 403 because it will confuse issues, mislead the jury, and waste time, while proving nothing. (*Id.*)

In response, Defendant states that "[t]he instant response to the government's motion *in limine* [ECF 118] assumes arguendo that the Court will deny the Defendant's Motion to Suppress the Statement on voluntariness grounds [ECF 114] and rule that the August 20, 2018 statement is admissible at trial for impeachment purposes. Should the Court grant the Motion to Suppress on voluntariness grounds this issue will be moot." (ECF No. 142 at 2 n.1.)

In the Court's November 29, 2021 Order Granting in Part and Denying in Part Defendant's Amended Motion to Suppress, the Court suppressed Defendant's statements made on August 20, 2018. (ECF No. 176.) The Court concluded that the conditions of confinement Defendant endured between the alleged assault and

3

Defendant's *Miranda* interview were so coercive that his will was overborne, rendering his statements involuntary. (*Id.* at 20.)

Based on Defendant's representation in his response that this issue is moot given the Court's suppression of his August 20, 2018 statement, the Court grants the Government's MIL. The Court precludes the parties from advancing any evidence or argument at trial regarding Defendant's placement in a "Stryker" chair, the Federal Bureau of Prisons' ("BOP") use of four-point restraints, or Defendant's confinement in the SHU in the days following the alleged assault on August 17, 2018.

**B.      Defendant's MIL**

     1.      <u>Motion in Response to Government Rule 404(b) Notice</u>

          a.      *Sentencing transcript from June 2016 sentencing*

The Government intends to introduce evidence of Defendant's statements at his sentencing on his prior conviction in the Western District of Missouri, Case No. 14-cr-00286-01-CR-W-GAF. At sentencing, Defendant said the following, among other things:

> I'm not sorry for what I did. I'm sorry that I got caught before I could do more things. I would have loved to attack more government buildings and make sure that bubble of safety that prosecutors and FBI agents and judges feel got shattered so that they stay in their safe pockets knowing they can't touch me even though there are consequences to my actions.

(ECF No. 144-1 at 2.)

In Defendant's MIL, he argues that this statement is "extraordinary [*sic*] prejudicial, fails to address the difference between property damage and harm to people, and is wholly irrelevant to the question here: whether or not [Defendant] assaulted Lieutenant (Lt.) Wilcox." (ECF No. 117 at 2.)

4

The Government argues that this evidence is admissible to show Defendant's motive and intent with respect to the charged assault because it shows that he possesses a deep-seated hatred for persons involved in the criminal justice system. (ECF No. 144-1 at 9.) *See* Fed. R. Evid. 404(b).  Additionally, if Defendant chooses to testify, the Government argues that this evidence would be admissible to show his bias against the government and government agents.  (ECF No. 144-1 at 9.)

The Court has considered the four *Huddleston* factors.  While the sentencing statement is offered for a proper purpose, the Court finds that its tangential relevance and extremely prejudicial content militate in favor of excluding this evidence.  The Court agrees with Defendant that there is a significant difference between the property damage discussed in the sentencing statement and the alleged physical assault at issue in this case.  Most importantly, the Court finds that the probative value of this evidence is substantially outweighed by its potential prejudicial effect on the jury.  Therefore, the Court grants this portion of Defendant's MIL.

      b.     *August 17, 2018 e-mail*

This portion of Defendant's MIL concerns the e-mail Defendant sent to his partner on August 17, 2018 prior to the alleged assault.  The parties agree that the e-mail should be admitted.  Therefore, the Court denies this portion of Defendant's MIL as moot.[1]

      c.     *Interactions with Officer Gustafson*

The Government intends to introduce evidence that on May 8, 2020, after being

---

[1] Defendant states that he objects to conclusory characterizations of this e-mail or other statements of his as "threats," without legal foundation for doing so. (ECF No. 117 at 2.) The Court discusses this issue later in this Order.

offered a shower by Correctional Officer Dustin Gustafson, Defendant replied, "I'm going to hurt you. You have a lot of bad things coming your way." (ECF No. 144-1 at 3.)

In Defendant's MIL, Defendant seeks "exclusion of all records related to [his] 2020 [Discipline Hearing Officer ("DHO")] proceedings regarding [his] alleged violations against Officer Gustafson at FCI Englewood, including events which took place on July 21, 2020, May 8, 2020, and April 3, 2020." (ECF No. 117 at 2.) Defendant states that these "violations include an allegation that in 2020, Defendant attempted to send Officer Gustafson's address to a third-party via prison mail, at another time stated a verbal threat towards Gustafson (which Defendant denies), and flicked an 'unknown substance' (water) at Officer Gustafson." (*Id.* at 2–3.) In Defendant's MIL, he argues that this evidence is impermissible propensity evidence. (*Id.* at 3.) Further, he argues that verbal or written threats are "clearly not 'similar' to the charged crime[] of assault." (*Id.* (quoting *Mares*, 441 F.3d at 1157 ("Where the uncharged acts show motive, intent, or knowledge, they are admissible whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time." (internal quotation marks and citation omitted))).)

As an initial matter, the Government points out that "[i]t is settled in the Tenth Circuit that evidence of 'other crimes, wrongs, or acts' may arise from conduct that occurs after the charged offense." *Mares*, 441 F.3d at 1157. The Tenth Circuit's "cases have held that '[r]egardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad

6

discretion.'" *Id.* (quoting *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996)).

As such, the Government states that this evidence is admissible to show Defendant's intent and motive with respect to the charged assault, as it shows his hatred and hostility toward correctional officers. (ECF No. 144 at 2–3.) *See* Fed. R. Evid. 404(b)(2). Additionally, should Defendant choose to testify, the Government contends that this evidence would be admissible to show his bias against correctional officers; it would also constitute "[e]vidence of Defendant's hatred of these entities," which is "probative of his willingness to testify falsely to portray these entities in the most negative possible light." (ECF No. 144 at 3.)

The Court has considered the *Huddleston* factors and finds that this evidence is offered for a proper purpose and is relevant. As above, the question turns on whether the probative value of the evidence is substantially outweighed by its prejudicial effect. The Court has considered the non-exclusive factors in assessing similarity outlined in *Mares*, which include: (1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4) whether the charged offense and the other acts are part of a common scheme. *See Mares*, 441 F.3d at 1158.

First, the acts occurred within two years of each other, which the Court determines is sufficiently close in time. The second factor considers geographical proximity, which the Court finds irrelevant here, as Defendant has no control over where he is incarcerated.[2]

The Court considers the third and fourth factors together and concludes that the

---

[2] The Court notes, however, that the fact that both sets of incidents occurred at correctional facilities tends to show geographical proximity, in some sense.

7

charged offense of assault on a correctional officer and Defendant's aforementioned interactions with Officer Gustafson are similar enough to pass muster. Unlike the events underlying Defendant's 2016 conviction, which concern property damage, his alleged assault on Lieutenant Wilcox is a physical action against a correctional officer. Similarly, Defendant's actions of sending Officer Gustafson's address to a third-party may reflect an intent to intimidate or physically harm Officer Gustafson at home. His verbal threats that he is going to "hurt" Officer Gustafson are similar, though not identical, to his alleged physical assault on Lieutenant Wilcox, as both implicate physical harm. Finally, flicking an unknown substance on a correctional officer also indicates an intent to physically harm, as Officer Gustafson may not have known the substance was merely water at the time of the incident.

In sum, all of these interactions with Officer Gustafson share the characteristics of intent to physically harm a correctional officer, as does the charge in this case. Therefore, the Court finds that these interactions are sufficiently similar, and that their probative value is not substantially outweighed by any potential prejudicial effect.

Therefore, the Court denies this portion of Defendant's MIL.

2.  <u>Motion to Exclude Prior Bad Acts</u>

Defendant seeks to exclude: (1) all records and evidence related to his previous DHO proceedings; and (2) Defendant's prior negative interactions with certain Government witnesses which occurred during his imprisonment at Florence. (ECF No. 117 at 4–5.) Regarding the DHO proceedings, he argues this evidence should be excluded because it is highly prejudicial and has little or no probative value; as such, he argues that admission of this evidence would violate Rule 404(b). (*Id.*) Regarding

Defendant's prior interactions with certain witnesses,[3] he requests that the Court issue an order specifying which, if any, other bad act evidence may be adduced at trial, and forbidding the government or its witnesses from introducing irrelevant and inadmissible character and propensity evidence. (*Id.* at 5.)

In response, the Government states that at this juncture, it does not intend to introduce evidence regarding any disciplinary proceedings related to a 2017 occurrence in Englewood. (ECF No. 144 at 3.) Additionally, the Government states that it does not intend to use Defendant's statements at the January 2019 disciplinary proceeding at USP Leavenworth unless Defendant testifies at trial; then the Government might use those statements for impeachment and cross-examination purposes. (*Id.*) Finally, the Government states that it does not otherwise intend to introduce evidence of BOP disciplinary proceedings unless Defendant opens the door. (*Id.*)

Given that the Government only intends to introduce evidence of other prior bad acts or disciplinary proceedings if Defendant first opens the door at trial, the Court will deny without prejudice this portion of Defendant's MIL at this time. Defendant is free to raise this objection at trial, if appropriate.

   3. <u>Motion to Exclude Testimony From/Regarding Lieutenant Wilcox</u>

     a. *Exclude government witnesses from referring to Wilcox as "victim"*

Defendant requests that the Court preclude the Government from using the word "victim" to describe Lieutenant Wilcox. (ECF No. 117 at 5.) The Government states that it does not intend to describe Lieutenant Wilcox as a "victim." (ECF No. 144 at 5.)

---

[3] Such interactions include observations regarding Defendant's partner being argumentative, their children being playful at visitation, Defendant submitting false complaints (it is unclear to whom), and Defendant's rule compliance during family visitation. (ECF No. 117 at 5.)

9

Based on the Government's representation, the Court denies this portion of Defendant's MIL as moot.

### b. *Exclude improper opinion testimony*

#### (i) Testimony regarding injuries

Defendant seeks to exclude testimony from Lieutenant Wilcox that his knuckle injury was the result of "grappling" rather than the result of a "punch." (ECF No. 117 at 7.) According to Defendant, such testimony would be self-serving speculation regarding the origin of injury and is not corroborated by or reflected in any medical opinion or documents regarding Lieutenant Wilcox in the discovery provided by the Government. (*Id.*)

In response, the Government argues that Lieutenant Wilcox should be permitted to testify about his observations as to his finger injury as a lay witness under Federal Rule of Evidence 701. (ECF No. 144 at 4.) Here, the Government argues that Lieutenant Wilcox will merely testify as to his observation, based on prior experience, that his finger injury appeared to be the result of a "grappling" motion as opposed to throwing a punch. (*Id.*) According to the Government, this testimony is based on Lieutenant Wilcox's perception, will be helpful to the jury in understanding his testimony about what occurred on August 17, 2018, including the injuries he suffered, and is not technical or specialized such that he would need to be tendered as an expert witness. *See* Fed. R. Evid. 701. Indeed, the Government states that such testimony is not even really an "opinion," but is rather nothing more than an observation that his injury was similar to certain other injuries he received in the past.

The Court will grant in part and deny in part Defendant's MIL on this issue. The motion is denied to the extent that the Court will permit Lieutenant Wilcox to testify as to

his observations about his finger injury and the altercation with Defendant. However, the motion is granted to the extent that Lieutenant Wilcox is prohibited from giving his opinion as to whether his finger injury was or was not the result of a closed-fist punch. Additionally, Lieutenant Wilcox is prohibited from offering testimony akin to an expert medical opinion that opines as to the cause of his injury.

       (ii)  Prisoner mental health

Defendant requests that the Court preclude Lieutenant Wilcox from speculating or offering an opinion regarding prisoner mental health or specifically Defendant's behavior as being consistent with any type of mental health problems or diagnosis. (ECF No. 117 at 7.) The Government states that it does not intend to elicit from Lieutenant Wilcox any opinions regarding prisoner mental health. (ECF No. 144 at 3.)

Based on the Government's representation, the Court denies this portion of Defendant's MIL as moot.

  4.  <u>Motion to Preclude Government from Offering Legal Conclusion That Defendant Engaged in "Threat" or "Assault"</u>

Defendant sent his partner an e-mail on August 17, 2018, which stated in pertinent part:

> So you want to hear great news?! A newer Paisa ROCKED A LT!! That's why we were locked down for a little bit lolol! One for the home team! I hope that the weight of every prisoner who has been disrespected, felt belittled, felt less than human by any guard or Lt ever was behind that punch. Wish I would have gotten to see it or experience it via VR. This is a win for every prisoner ever. Hard to stop smiling thinking about it.

(ECF No. 120-3.) While Defendant agrees that the e-mail prompted the interview underlying the allegations in the Indictment, he points out that he is not charged with threats, nor is there any indication that the e-mail contained a threat. (ECF No. 117 at

11

8.)  Therefore, Defendant requests that the Court preclude the Government or its witnesses from characterizing the e-mail or other verbal statements as "threats" or "threatening."  (*Id.*)  He contends that allowing the use of these words mischaracterizes the evidence and permits a legal conclusion.  (*Id.*)  He cites no legal authority in support of this portion of the argument beyond a Tenth Circuit case defining "threat."

Additionally, Defendant states that witnesses and disciplinary records repeatedly refer to him committing assault, which he states is a legal conclusion.  (*Id.*)  Because whether an assault against Lieutenant Wilcox occurred is the "very heart of this case," Defendant argues that the Government's witnesses should not be permitted to testify that Defendant had "a history of assaulting staff," "assaulted Wilcox," or draw legal conclusions that specific acts were assaults when the word assault is itself the issue the jury will determine in this case.  He cites no legal authority in support of this argument.

In response, the Government argues that Defendant's request is overbroad and will unfairly prejudice the Government.  (ECF No. 144 at 4.)  The Government states that the word "threat" is a word in common usage in the English language to describe "an expression of intention to inflict. . . injury" or "an indication of something impending."  (*Id.*)  *See, e.g.*, *United States v. Christy*, 2019 WL 6048951, at *2 (M.D. Pa. Nov. 14, 2019)  ("The Court declines to make an all encompassing ruling as to the whether Government's counsel may use the word "threat," divorced from the circumstances where any actually-uttered question is being challenged.").  Similarly, the word "assault" is also in common usage and is part of the title of the charge in the indictment: "assaulting a federal officer."  (ECF No. 144 at 5.)

If the Court were to prohibit the Government and its witnesses from using these

words to describe the altercation on August 17, 2018, the Government argues that such a ruling would "require government witnesses to engage in unnecessary verbal gymnastics." (*Id.*)  Further, the Government underscores that the jury will be instructed on the legal definitions it must apply in this case.

The Court has carefully considered whether the prejudicial effect of using the terms "threat" and "assault" at trial will outweigh the probative value of these terms; the Court concludes that it does not.  Rather, the Court finds that in a trial in which the one charge in the indictment concerns whether Defendant "did forcibly assault, resist, oppose, impede, intimidate, and interfere with D.W., an employee and officer of the Federal Bureau of Prisons," (ECF No. 1), to prohibit the use of the terms "threat" and "assault" *would* result in witnesses engaging in "unnecessary verbal gymnastics."  The Court also agrees with the Government's statements that the words "threat" and "assault" are ones with which a jury will be very familiar, and the risk of jurors drawing a legal conclusion based on the use of such terms during trial is low.  To the extent either party wishes the Court to include a limiting instruction to protect against such a possibility, the Court will permit the parties to propose such a limiting instruction.

Therefore, the Court denies this portion of Defendant's MIL.

5.  <u>Motion to Preclude the Government from Offering Testimony That Defendant Is a "Terrorist"</u>

Defendant requests that the Court preclude the Government or witnesses from using the word "terrorist" to describe him. (ECF No. 117 at 8.)  The Government responds that it does not intend to describe Defendant as a "terrorist" at trial.  (ECF No. 144 at 5.)

Based on the representation of the Government, the Court denies this portion of

Defendant's MIL as moot.  However, given the potentially extreme prejudice to Defendant if the term "terrorist" is used at trial, the Court cautions the Government to instruct its witnesses that under no circumstances should they refer to Defendant as a "terrorist" in the course of their testimony at trial.

      6.     <u>Motion to Exclude Testimony or Evidence Regarding the Facts or Circumstances of Defendant's Underlying Offense Under 18 U.S.C. § 844(H)</u>

Defendant does not dispute that if he testifies at trial, the Government may introduce evidence to establish his status as a felon under Federal Rule of Evidence 609.  (ECF No. 117 at 9.)  Further, he is willing to stipulate that he is a felon and was imprisoned on the date of the offense for a felony.  (*Id.*)  However, he requests that the Court exclude evidence of "the actual facts of [his] underlying crime of conviction . . . ." (*Id.*)  The Government states that it does not intend to offer evidence of the facts of Defendant's underlying conviction for which he is currently serving a prison sentence unless Defendant opens the door to such testimony.  (ECF No. 144 at 5.)

Based on the Government's representation, the Court denies this portion of Defendant's MIL as moot.

### III. CONCLUSION

For the reasons stated above, the Court ORDERS that:

1.     The Government's MIL (ECF No. 118) is GRANTED;

2.     Defendant's MIL (ECF No. 117) is GRANTED IN PART AND DENIED IN PART, as set forth above; and

3.     The Court has denied or denied in part Defendant's MIL as to four categories of evidence, including interactions with Officer Gustafson, evidence of Defendant's prior bad acts, Lieutenant Wilcox's testimony regarding his finger injury, and the use of the

terms "threat" and "assault" at trial.  The Court DIRECTS the parties to confer and submit joint proposed limiting instructions on these categories of evidence by **February 18, 2022**.  If the parties cannot agree on such instructions, they may submit their own separate proposed instructions.  At the time of trial the Court will decide which, if any, of these instructions will be submitted to the jury.

Dated this 26th day of January, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge